# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3854

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

EDGAR LUDIN LOPEZ-HERNANDEZ,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 CR 312-1—**George W. Lindberg**, *Judge*.

ARGUED JULY 11, 2012—DECIDED JULY 27, 2012

Before POSNER, MANION, and TINDER, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant, a 27-year-old Mexican citizen, pleaded guilty to being in the United States without permission after he had been deported, 8 U.S.C. § 1326(a), and was sentenced to 71 months in prison, the top of the applicable guidelines range (the bottom is 57 months). His principal ground of appeal is that the judge should not have taken

into account, in deciding to sentence him at the top of the range, his 41 arrests that had not resulted in convictions. He did have five previous convictions, including one for attempted armed robbery—and it was an attempt only because the wallet that the defendant and an accomplice took from their victim at gunpoint turned out to be empty. His prior convictions contributed to placing him in the criminal history category (IV) that generated the 57-71 month guidelines range.

In deciding to sentence the defendant at the top of the range the district judge refused to "ignore the 41 arrests that did not lead to convictions and were for offenses that included possession of cannabis, reckless conduct, negligent driving, no driver's license, no liability insurance, domestic battery, aggravated assault, aggravated intimidation, soliciting unlawful business, reckless damage to property, disorderly conduct, and more than a dozen arrests for criminal trespass." He added that "the particular sentence was imposed for the reasons stated in the attached transcript and, more specifically, for the extraordinary criminal history, especially the number of arrests for serious offenses that did not lead to convictions." The rest of his sentencing statement is the usual boilerplate about his having considered the statutory sentencing factors. 18 U.S.C. § 3553(a).

The defendant argues—and the government, confessing error, agrees (perfunctorily and unconvincingly)—that the judge should not have considered the arrests without determining that the defendant had actually

engaged in the conduct for which he had been arrested. We had said in *United States v. Guajardo-Martinez*, 635 F.3d 1056, 1059 (7th Cir. 2011), that "a sentencing court may not rely on the prior arrest record *itself* in deciding on a sentence." See also *United States v. Torres*, 977 F.2d 321, 330 and n. 4 (7th Cir. 1992); *United States v. Johnson*, 648 F.3d 273, 276-77 (5th Cir. 2011); *United States v. Berry*, 553 F.3d 273, 284 (3d Cir. 2009). But the word we've italicized is key, because our opinion quickly adds that "the court may still consider the underlying conduct detailed in arrest records where there is a sufficient factual basis for the court to conclude that the conduct actually occurred." 635 F.3d at 1059; see also *United States v. Berry*, *supra*, 553 F.3d at 284; *United States v. Hawk Wing*, 433 F.3d 622, 628 and n. 4 (8th Cir. 2006) (collecting cases), abrogated on other grounds in *Tapia v. United States*, 131 S. Ct. 2382 (2011). When "police reports . . . supply 'underlying facts' which at least arguably contain reliable information about [the defendant's] prior similar adult conduct" and the defendant "failed to object to underlying facts," the judge can take account of those facts in deciding what sentence to impose. *United States v. Terry*, 930 F.2d 542, 546 (7th Cir. 1991); see also *United States v. Guajardo-Martinez*, *supra*, 635 F.3d at 1059-60; *United States v. Turner,* 604 F.3d 381, 385 (7th Cir. 2010); *United States v. Robertson*, 568 F.3d 1203, 1212 (10th Cir. 2009); *United States v. Dixon*, 318 F.3d 585, 591 (4th Cir. 2003); *United States v. Williams*, 989 F.2d 1137, 1142 (11th Cir. 1993) (per curiam).

Of the defendant's 41 arrests, 26 list merely the date, the defendant's age, the charge (reckless damage to property,

knowingly damaging property, soliciting unlawful business, possession of cannabis, disorderly conduct, battery, gang activity, and—the most frequent offense for which the defendant was arrested—criminal trespass to land), the agency making the arrest (always the Chicago Police Department), and the disposition (nolle prossed, screened out, released to parent, unknown, referred to court, or stricken off with leave to reinstate). No cases of mistaken identity are listed. With regard to each of the remaining 15 arrests, there is a summary either of a petition for an adjudication of wardship (4 arrests) or of the police department's arrest report (the other 11 arrests). We quote four of the summaries: (1) "defendant was a passenger in a vehicle stopped for a minor traffic violation. Upon approaching the vehicle, officers detected strong odor of cannabis at which time the defendant freely admitted to having possession of one cannabis cigarette. Further investigation revealed one cigar rolled with a crushed green leafy substance, suspect cannabis;" (2) "the defendant knowingly remained on the land of the complainant Jill Kuneth after receiving notice to depart several times;" (3) "the defendant was identified by the victim Thyandrea Adams as the individual who threw a glass bottle at the windshield of her automobile while she was attempting to park;" (4) "officers observed the defendant in the middle of an intersection yelling 'SGD' [Spanish Gangster Disciples] and making gang signs." The remaining summaries are similar.

Since the defendant does not question the accuracy of any of the summaries, the judge was entitled to

take account of at least the 15 arrests for which there are summaries in deciding whether to sentence the defendant at the top of the guidelines range. True, the only figure in the judge's sentencing statement for the number of arrests is 41; and when an arrest report is not summarized in the presentence investigation report it is difficult to know what weight to give the arrest. All the unsummarized arrests, moreover, took place before the defendant reached the age of 17—a fact the judge didn't mention either. The presentence investigation report does, however, summarize the wardship or police reports for all the defendant's arrests after he turned 17 and all the arrests mentioned by the judge except those for disorderly conduct, reckless damage to property, soliciting unlawful business, 13 of his 16 arrests for criminal trespass to property, and 1 of his 5 arrests for possession of cannabis.

Besides not questioning the accuracy of the summaries, the defendant does not suggest that the 26 arrests for which there are no summaries were ungrounded in facts. And the disposition column in the list of arrests reveals no systematic difference in how the two classes of arrest were handled.

In light of the defendant's failure to challenge the accuracy of anything in his lengthy arrest record, the judge was entitled to assume that the 41 arrests considered as a whole, when coupled with the defendant's five convictions, gave a more accurate picture of the likelihood of recidivism than the convictions and arrest summaries alone and justified a sentence at the top

of the guidelines range. Because the range is only 14 months—57 to 71—a mid-guidelines sentence would be 64 months, so in effect the judge gave the defendant a seven-month sentencing bonus on account of the 41 arrests that did not result in convictions (or, as far as appears, in exonerations). That increase can't be thought excessive.

The defendant argues that the judge couldn't allow *any* of the arrests that did not result in convictions to influence the sentence—that due process of law required him to find by a preponderance of the evidence that the defendant had actually committed the crimes for which he had been arrested. That argument makes no sense when the defendant failed to challenge the accuracy of any arrest report or for that matter the factual basis of any arrest for which there is no report summary. Because not all arrests even of the guilty result in prosecution—police, prosecutors, and courts lack the resources—the sentencing guidelines do not forbid a judge to consider a defendant's arrest record in deciding where to sentence *within* the applicable guidelines range, as happened here. Section 4A1.3(a)(3) of the guidelines prohibits consideration of a "prior arrest record itself" only "for purposes of an upward departure" as distinct from imposition of a sentence within or below the applicable range. See also *United States v. Brown*, 516 F.3d 1047, 1053 (D.C. Cir. 2008).

We have no quarrel with the statement in *United States v. Berry*, *supra*, 553 F.3d at 281, that "unsupported speculation about a defendant's background is

problematic whether it results in an upward departure, denial of a downward departure, or causes the sentencing court to evaluate the § 3553(a) factors with a jaundiced eye," or with the statement that a "bare arrest record" is an inadequate ground for a sentence adjustment. *Id*. at 284, But the court in *Berry* added "that there may be situations where the number of prior arrests, and/or the similarity of prior charges to the offense of conviction, becomes so overwhelming and suggestive of actual guilt that they become exceedingly difficult to ignore," citing with approval a case—in fact a case of ours, *United States v. Walker*, 98 F.3d 944, 948 (7th Cir. 1996)—in which the court "thought that 23 prior arrests was probative of underlying criminality." *United States v. Berry*, *supra*, 553 F.3d at 281. See also *United States v. Johnson, supra*, 648 F.3d at 278 (citing with approval the passage we just quoted from *Berry*). Compare *United States v. Zapete-Garcia*, 447 F.3d 57, 60-61 (1st Cir. 2006), where we read that "although a series of past arrests might legitimately suggest a pattern of unlawful behavior even in the absence of any convictions, Zapete was arrested only a single time, more than a decade ago." In this case we have 41 previous arrests.

So much for the arrests; one other claim by the defendant requires discussion—that he should have been given a lenient sentence for illegally reentering the United States because, though he is not a citizen, he had moved to the United States at the age of 3 and so has undergone "cultural assimilation"—in other words has become in a practical sense, though not in law, an American—and so can hardly have been expected to remain in

Mexico when he was deported. But a "departure based on cultural assimilation" is a mitigating factor in sentencing a defendant charged with illegal reentry only when "such a departure is not likely to increase the risk to the public from further crimes of the defendant." U.S.S.G. § 2L1.2, Application Note 8(c). Given our defendant's criminal record stressed by the district judge, which included both arrests and a conviction for crimes that he committed *after* his illegal reentry, there was no basis for a cultural-assimilation adjustment.

The judgment is

AFFIRMED.