In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3892

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MAURICIO GONZALEZ-LARA,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois.
No. 1:11-cr-350—**Robert M. Dow**, *Judge.*

ARGUED SEPTEMBER 6, 2012—DECIDED DECEMBER 11, 2012

Before EASTERBROOK, *Chief Judge,* and FLAUM and WIL-
LIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Mauricio Gonzalez-Lara,
a Mexican national, was deported following a 1999
state conviction for selling $50 worth of cocaine. In 2001,
he unlawfully returned to the United States and was
charged with illegal reentry. He pled guilty and was
sentenced to 66 months' imprisonment. On appeal,
Gonzalez-Lara challenges the district court's application

of U.S.S.G. § 2L1.2(b)(1)(A)(i), which requires an offense level increase of sixteen levels if, prior to deportation, the defendant is convicted of a drug offense that results in a term of imprisonment exceeding 13 months. Gonzalez-Lara contends that he should not have received the sixteen-level enhancement because he did not receive a sentence exceeding 13 months until his probation on the drug trafficking offense was revoked. Because we find Gonzalez-Lara ultimately received a three-year sentence for the drug trafficking offense prior to his deportation, we affirm the application of the enhancement.

Gonzalez-Lara also challenges the district court's decision not to grant a downward departure under Application Note 8 to U.S.S.G. § 2L1.2, which allows a guidelines departure for unlawful entry if a defendant has "assimilated" to the local culture. Because Gonzalez-Lara did not move to the United States until he was an adult and he has a lengthy criminal history, the district court was not persuaded that the departure was warranted. We agree and affirm the sentence.

## I. BACKGROUND

Mauricio Gonzalez-Lara, a native and citizen of Mexico, was nineteen when he first entered the United States illegally in 1985. Soon thereafter, his wife and their young child joined him in the United States, and the couple had three more children—each one a citizen of the United States by birth. As the Presentence Investigation Report ("PSR") reveals, Gonzalez-Lara struggles

with alcoholism, and he received three convictions related to his alcohol abuse between 1991 and 1999. At issue in this appeal is his May 1999 conviction for selling a small amount of cocaine worth $50. Originally, he was sentenced to a term of 180 days of imprisonment and 24 months of probation. For reasons that are not entirely clear from the parties' briefing and the record, his probation for the drug offense was revoked in August 1999 after he violated the terms of his probation. He was resentenced to a term of three years' imprisonment and deported from the United States in May 2000.

Sometime in 2001, after his wife told him that she needed his help raising their four young children, Gonzalez-Lara unlawfully reentered the United States. From 2001 to 2008, he was convicted eight additional times, primarily for offenses related to his alcohol abuse. While imprisoned for driving under the influence of alcohol in 2008, Gonzalez-Lara came to the attention of Immigration and Customs Enforcement officials and was charged with illegal reentry by a removed alien, in violation of 8 U.S.C. § 1326(a), 8 U.S.C. § 1326(b)(2), and 6 U.S.C. § 202(4). He pled guilty after entering into a written plea agreement with the government.

The district court held a sentencing hearing on December 13, 2011. The PSR assigned a base offense level of eight to Gonzalez-Lara's illegal reentry offense as dictated by U.S.S.G. § 2L1.2(a); a sixteen-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A) due to his pre-

deportation drug trafficking conviction for which he received the three-year sentence; and a three-level reduction for acceptance of responsibility and a timely plea. The resulting total offense level of 21 and criminal history category of IV yielded a guidelines imprisonment range of 77 to 96 months.

Gonzalez-Lara urged the district court to reject the sixteen-level enhancement for the pre-deportation conviction because his original sentence (prior to his probation revocation) was less than 13 months' imprisonment. According to Gonzalez-Lara, application of the enhancement should only be premised upon the defendant's original sentence (and not any subsequent probation revocation or resentencing) because that sentence accounts for the seriousness of the offense. Gonzalez-Lara also argued that he should have been given a more lenient sentence because he only reentered the United States in 2001 to care for his minor children, and so he should receive a "departure based on cultural assimilation." *See* U.S.S.G. § 2L1.2 cmt. n.8. He further argued that he is "culturally assimi-lated to Mexico just like he is here [in the United States]," and that he has stronger reason to stay in Mexico now that his parents (who live there) are elderly.

The district court first rejected Gonzalez-Lara's position with respect to the sixteen-level enhancement. Relying on this court's decision in *United States v. Lopez*, 634 F.3d 948 (7th Cir. 2011), the district court focused on the temporal aspect of the enhancement and concluded that regardless of Gonzalez-Lara's

original sentence of 180 days' imprisonment and 24 months' probation, his ultimate pre-deportation sentence of three years' imprisonment triggered the sixteen-level enhancement. When assessing the relevant 18 U.S.C. § 3553(a) factors, however, the district court acknowledged that Gonzalez-Lara's conduct was "less culpable than the path of a typical person" who receives such a sixteen-level increase.

As for Gonzalez-Lara's cultural assimilation argument, the district found that it "cut both ways." The district court recognized that Gonzalez-Lara unlawfully reentered the United States in 2001 because his wife and four young children were in this country, and that he may indeed have a genuine reason to remain in Mexico now that his parents are elderly. But, in the district court's view, that argument was a "Catch-22" because "the people who could help [Gonzalez-Lara] the most are the people [in the United States] that he is going to have to stay away from as a matter of law." The district court further explained that a sentence departure based on cultural assimilation is stronger in the case of someone who is brought to the United States as a young child and grows up in this country, and less compelling for someone with a category IV criminal history. So the district court sentenced Gonzalez-Lara to 66 months' imprisonment—11 months below the 77 to 96 guideline range. Gonzalez-Lara now appeals.

## II. ANALYSIS

Gonzalez-Lara challenges two elements of the district court's application of § 2L1.2, which governs convictions for unlawful reentry. We review the district court's application of the sentencing guidelines *de novo* and its findings of fact for clear error. *United States v. Sheneman*, 682 F.3d 623, 630 (7th Cir. 2012) (citation omitted). Both challenges to his sentence are without merit.

### A. Sixteen-level Enhancement for Pre-Deportation Conviction

Gonzalez-Lara maintains that he should not have received the sixteen-level enhancement, because he initially received a sentence of only 180 days' imprisonment and 24 months' probation for his drug trafficking offense. Section 2L1.2(a) of the United States Sentencing Guidelines typically assigns a base offense level of 8 to the offense of unlawfully entering the United States. If, however, "the defendant was previously deported, or unlawfully remained in the United States, *after* . . . a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months . . ." or other offenses not relevant here, then the offense level increases by sixteen levels. U.S.S.G. § 2L1.2(b)(1)(A) (emphasis added).

Nothing in the plain text of the guideline supports Gonzalez-Lara's argument that the sixteen-level enhancement should only apply when a defendant's original pre-revocation sentence results in a term of imprisonment exceeding thirteen months. The guideline

states that the enhancement applies if the "defendant previously was deported . . . after" a conviction—precisely the situation here. Gonzalez-Lara's probation was revoked on August 3, 1999, and he was resentenced to three years' imprisonment ten months *before* his May 2000 deportation to Mexico. Moreover, Application Note 1(B)(vii) to § 2L1.2 further confirms that a sentence imposed pursuant to probationary revocation still qualifies for the sentence enhancement: "The length of the sentence imposed includes any term of imprisonment given upon revocation of probation, parole, or supervised release." Though Gonzalez-Lara initially received a sentence below the guideline's thirteen-month threshold, the later revocation of his probation prior to his deportation triggered the sixteen-level enhancement.

With no help from the plain text of the Sentencing Guidelines, Gonzalez-Lara looks to support from our decision in *United States v. Lopez*. In *Lopez*, we considered a challenge to a § 2L1.2 enhancement where the defendant had a previous state court drug trafficking conviction for which he was initially sentenced to probation prior to his deportation. We held that the later sentence the defendant received after his deportation upon revocation of his probation did not count for purposes of enhancement under § 2L1.2(b)(1)(A) because "[t]he decisive issue under the terms of section § 2L1.2(b)(1)(A) is what sentence was imposed before the defendant was deported and reentered." *See* 634 F.3d at 953 n.2. In Gonzalez-Lara's case, the enhancement applies since both Gonzalez-Lara's initial conviction *and*

later probation revocation occurred prior to his deportation and reentry.

Yet Gonzalez-Lara asks us to assign particular importance to a passage in *Lopez* in which we noted that "[p]robation revocation sentences imposed after a defendant has been deported tell us little about the seriousness of either the prior drug trafficking crime or the new crime of illegal entry." *Id.* at 951. But Gonzalez-Lara fails to acknowledge the different factual circumstances we faced in *Lopez:* "Lopez was deported *before* the higher, over-the-threshold sentence was imposed," whereas here, "the increased sentence was imposed before [Gonzalez-Lara's] deportation and later illegal reentry." *Id.* at 953, and n.2. (emphasis added). This circuit has never taken the position that an initial probationary sentence should trump a later sentence imposed for the purposes of an enhancement under § 2L1.2(b)(1)(A)(i) when the probation was revoked *before* deportation. In fact, our sister circuits that have addressed precisely this issue concluded that the sixteen-level enhancement should apply. *See, e.g., United States v. Compian-Torres*, 320 F.3d 514 (5th Cir. 2003); *United States v. Moreno-Cisneros,* 319 F.3d 456 (9th Cir. 2003).

Therefore, the district court properly applied the enhancement to Gonzalez-Lara. Though we recognize that the sixteen-level enhancement is significant and may produce a high sentencing range, the proper approach is not to ignore the text of the enhancement, but rather evaluate the sentence in light of the

factors provided in 18 U.S.C. § 3553(a)—exactly as the district court did in this case.

### B. Departure for Cultural Assimilation

Gonzalez-Lara does not qualify for the downward departure he seeks due to cultural assimilation. Application Note 8 to § 2L1.2 recognizes that a defendant's culpability for illegal reentry may be mitigated when his or her cultural ties to the United States motivated the reentry. The Guidelines set forth the specific situations in which cultural assimilation warrants a downward departure:

> Such a departure should be considered only in cases where (A) the defendant formed cultural ties primarily with the United States from having resided continuously in the United States from childhood, (B) those cultural ties provided the primary motivation for the defendant's illegal reentry or continued presence in the United States, and (C) such a departure is not likely to increase the risk to the public from further crimes of the defendant.

U.S.S.G. § 2L1.2, cmt. n.8. But Gonzalez-Lara does not qualify for an adjustment under this amendment since he first entered the United States as an adult and was convicted eight additional times after his illegal reentry. *See United States v. Lopez-Hernandez*, 687 F.3d 900, 904 (7th Cir. 2012); *United States v. Ortega-Galvan*, 682 F.3d 558, 561 (7th Cir. 2012).

Nevertheless, the district court thoroughly considered Gonzalez-Lara's cultural assimilation argument and understood that the "draw of being a responsible parent" may explain "why he [illegally reentered this country] in the first place." But, in the district court's view, the same strong familial ties that caused Gonzalez-Lara to illegally reenter the United States in the first place continued to create a significant risk that he would reenter the country again in the future. To be clear, the district court did not, as Gonzalez-Lara suggests, treat Gonzalez-Lara's cultural ties as an aggravating factor or *increase* his sentence based on a fear that he would violate the order of deportation. The court merely chose not to *decrease* the sentence simply because he reentered the United States to help raise his children. As a result, we find no procedural error in the district court declining to apply a downward departure based on cultural assimilation.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.