NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 8, 2014
Decided November 21, 2014

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 14-1220

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| v. | No. 13 CR 505 |
| JAVIER CAMACHO-MONTALVO, *Defendant-Appellant.* | Charles P. Kocoras, *Judge.* |

**O R D E R**

After having twice been removed from the United States, Javier Camacho-Montalvo returned. In May 2013 federal immigration officers arrested him for illegal reentry, *see* 8 U.S.C. § 1326(a); 6 U.S.C. § 202(4). Camacho-Montalvo pleaded guilty to the illegal-reentry charge, and the district court sentenced him to 46 months' imprisonment. He now appeals his sentence, arguing that the district court failed to consider six of his principal arguments in mitigation. Because the district court adequately discussed Camacho-Montalvo's arguments in mitigation, we affirm.

Camacho-Montalvo, a native and citizen of Mexico, came to the United States in 1980 at the age of 12. At age 14, he moved to Chicago and the Pilsen Wellness Center helped him find a place to live and employment. In 1987 he moved in with a co-worker and enrolled in high school (he graduated in 1989). In 1989, while in jail for battery, he married his high-school girlfriend, who was then-pregnant with the couple's first child.

Two years later, in 1991, immigration authorities deported Camacho-Montalvo for the first time; he had just completed serving a sentence for aggravated battery and robbery. Camacho-Montalvo quickly returned to the United States to be with his wife and son. The couple had two more children, a daughter and son, and were together for about nine years before they separated in 2000. Over the next six years, Camacho-Montalvo was convicted three times for driving under the influence of alcohol ("DUI") and was removed again in 2007. He again returned to the United States and in 2011 was convicted of aggravated DUI in Cook County.

In April 2013, Camacho-Montalvo, who was in custody for yet another DUI conviction, again caught the attention of immigration and customs enforcement agents. Immigration officers arrested Camacho-Montalvo in May after he was released from state custody, and a grand jury returned a single-count indictment against him a month later charging him with being in the United States without the express permission of the Attorney General after having been previously deported and removed, *see* 8 U.S.C. § 1326(a); 6 U.S.C. § 202(4). In October 2013, Camacho-Montalvo pleaded guilty to one count of illegal reentry.

The presentence report recommended a sentence of 46 to 57 months' imprisonment, given Camacho-Montalvo's guidelines offense level of 17 and criminal-history category of V. Neither party challenged the guidelines calculation and the district court adopted it. The government requested a within-guidelines sentence because Camacho-Montalvo had several convictions for DUI offenses, two previous removals, and a high risk of recidivism because of his cultural ties to the United States.

Camacho-Montalvo asked the district court to impose a below-guidelines sentence. He argued that he had a low risk of recidivism because he has strong family ties in Mexico and job opportunities that were waiting for him in the Cancun tourist industry. He explained that he returned to the United States because he was culturally assimilated to the country and because he needed to care for his sick mother. He also argued that he originally returned for his three children, but they are all adults and not reliant on him. He added that a below-guidelines sentence was necessary because of his

difficult childhood, alcoholism, and struggle to maintain sobriety. Finally, he argued that a within-guidelines sentence would be unduly harsh because the reentry guidelines are empirically unsound, unjustified, and severely punishes him for offenses committed when he was 20 and 22 years old, even though he is now 45 years old.

The district court acknowledged that Camacho-Montalvo had a difficult childhood and an alcohol problem, but believed that these characteristics did not outweigh his track record of illegal entries and his criminal record of several DUI offenses. The court found that Camacho-Montalvo was a recidivist—with an extensive criminal record consisting of 13 convictions—and had every reason to return the United States including a high school degree and job opportunities. Thus, the court determined that a 46-month sentence was appropriate.

On appeal Camacho-Montalvo argues that the district court procedurally erred when it failed to consider six of his arguments in mitigation. Indeed, a district court must address nonfrivolous, factually-based arguments in mitigation. *See United States v. Cunningham*, 429 F.3d 673, 678–79 (7th Cir. 2005).

During oral arguments, Camacho-Montalvo's counsel focused on the fact that the court never addressed his principal argument in mitigation—that the reentry guidelines are too harsh, not supported by empirical data, and unfairly increased his offense level and criminal-history score by including offenses that he committed when he was much younger. However, these are arguments that the district court need not address. *See* U.S.S.G. § 5H1.1 (age relevant only when defendant is old and infirm); *United States v. Aguilar-Heurta*, 576 F.3d 365, 367–68 (7th Cir. 2009) (district court need not address argument that guidelines are generally unworthy of application).

Camacho-Montalvo's remaining arguments are equally unsuccessful. Camacho-Montalvo argues that the district court also failed to address his strong family ties, cultural assimilation, difficult childhood, alcohol addiction, and plan not to reenter the United States again.

District courts need not discuss routine family-ties arguments that do not encompass extraordinary circumstances. *See* U.S.S.G. § 5H1.6; *United States v. Gary*, 613 F.3d 706, 709 (7th Cir. 2010). Camacho-Montalvo argued that he reentered the United States to be with his children (who are now adults) and care for his sick mother by cooking for her and taking her to medical appointments.  He stated that after completing his sentence, he plans to permanently reside in Mexico with his three

brothers and three sisters, who will help him find employment. But Camacho-Montalvo's case does not present extraordinary family ties and responsibilities that would remove his case out of the heartland of cases sentenced under the guidelines. Courts often do not consider the defendant's continuous care for family members to be extraordinary, *see, e.g.*, *United States v. Christman*, 607 F.3d 1110 (6th Cir. 2010) (noting that when feasible alternatives for continuous care taking exist, like a nursing home or care from other family members, the defendant is not an irreplaceable caretaker); *United States v. Pereira*, 272 F.3d 76, 80–81 (1st Cir. 2001) (noting that "time-consuming family responsibilities" are not sufficiently extraordinary to warrant a downward departure); thus, it is difficult to conclude that Camacho-Montalvo's cooking and driving activities for his mother constitute extraordinary circumstances. In addition, Camacho-Montalvo cannot use his past care-taking activities for his now-adult children as a basis for a downward departure. *See United States v. Runyan*, 639 F.3d 382, 383 (7th Cir. 2011).

The district court orally addressed each of Camacho-Montalvo's remaining arguments. A district court may consider cultural assimilation as a mitigating factor when the departure is "not likely to increase the risk to the public from further crimes of the defendant." U.S.S.G. § 2L1.2 app. n.9. Here the district court made numerous references to Camacho-Montalvo's cultural ties in the United States including his job and high school degree, but found that Camacho-Montalvo had not "appreciate[d] what America has to offer." Overall, Camacho-Montalvo's multiple convictions for DUIs and multiple removals made an adjustment for cultural assimilation inappropriate. *See United States v. Lopez-Hernandez*, 687 F.3d 900, 904 (7th Cir. 2012) (explaining no basis for cultural-assimilation adjustment when defendant had extensive criminal record); *United States v. Lua-Guizar*, 656 F.3d 563, 567 (7th Cir. 2011) (finding no error when district court did not grant adjustment because it was unpersuaded that defendant would not recidivate given multiple convictions).

The court explicitly recognized that Camacho-Montalvo had a difficult upbringing and a history of alcohol abuse, but found that neither characteristic excused his criminal record and history of reentry. The district court also explicitly disbelieved Camacho-Montalvo's assertion that he would remain in Mexico after his sentence, noting that Camacho-Montalvo had twice reentered and has numerous ties to the United States. *See United States v. Gonzales-Lara*, 702 F.3d 928, 932–33 (7th Cir. 2012) (finding no procedural error when court determined that defendant posed "significant risk" of reentering country).

Overall, the district court properly addressed (or appropriately disregarded) Camacho-Montalvo's six mitigating arguments. Therefore, we affirm the judgment of the district court.