In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-2981

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

NATHAN MANSFIELD,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:19-cr-00038 — **James R. Sweeney, II**, *Judge*.

ARGUED NOVEMBER 3, 2021 — DECIDED DECEMBER 28, 2021

Before KANNE, BRENNAN, and KIRSCH, *Circuit Judges*.

BRENNAN, *Circuit Judge*. Nathan Mansfield was convicted
of possession with intent to distribute methamphetamine and
sentenced to 188 months in prison. He now argues the district
court erred by considering his arrest history during
sentencing. But Mansfield waived this challenge when his
counsel did not object to the district court's consideration of
the presentence investigation report or its contents. Even if
this point was not waived, a substantial history of arrests,

especially if they are similar to the offense of conviction, can be a reliable factor to consider at sentencing. We therefore conclude the district court did not err when it reviewed Mansfield's arrest history.

**I**

In January 2019, law enforcement officers intercepted a package containing 6.6 kilograms of methamphetamine. The officers then conducted a controlled delivery to Nathan Mansfield's home, the package's original destination. Once the package was opened, the officers executed an anticipatory search warrant and arrested Mansfield as he exited the rear of the house.[1] A grand jury indicted Mansfield for violating 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2.

Mansfield received a copy of his presentence investigation report ("PSR") in June 2020. That report calculated a total offense level of 31 and a criminal history category of VI and recommended an imprisonment range under the Sentencing Guidelines of 188 to 235 months.

The PSR listed 26 "[o]ther [a]rrests" of Mansfield between 1992 to 2013. These arrests involved at least 49 charges, including, among other things, domestic battery and battery resulting in bodily injury, resisting law enforcement, felony intimidation, and neglect of a dependent. The arrests also included a series of drug possession charges in 2005, 2006,

---

[1] An anticipatory search, like the one executed in this case, is "a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." *United States v. Grubbs*, 547 U.S. 90, 94 (2006) (quoting 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 3.7(c), at 398 (4th ed. 2004)); *United States v. Whited*, 539 F.3d 693, 697 (7th Cir. 2008) (same).

and 2007, culminating in two 2013 felony charges for "Dealing in Cocaine or Narcotic," and three 2013 felony charges for "Possession of Cocaine or Narcotic." The disposition for 48 of these charges was listed as "Dismissed," "No Action Taken," or "Unknown disposition." For the other charge—a 1999 criminal trespass charge—the disposition was listed as "Not guilty."

Mansfield entered an open guilty plea.[2] Less than a month before sentencing, Mansfield filed a Notice of Request for Departure Due to Role Reduction at Sentencing. This notice stated that Mansfield would request "the court depart downward and adjust his base level commensurate to his minimal role in the criminal activity that led to his arrest." The notice did not challenge the accuracy of the PSR or the inclusion of Mansfield's arrest history. Several weeks later, in advance of his sentencing hearing, Mansfield filed a sentencing memorandum. Once again, he did not challenge the accuracy of the report or the inclusion or accuracy of his arrest history. Rather, the sentencing memorandum focused on Mansfield's health, role in the crime, lack of dangerousness, and character.

At the sentencing hearing, Mansfield's counsel confirmed that she and Mansfield had "read and discussed [the] presentence report." The district court asked Mansfield's counsel if she had any objections "other than" the notice Mansfield filed, which "could be deemed as a request for departure." She confirmed there were none. The district court then explained its conclusions and asked if there was "any objection

---

[2] "[A] plea made by the defendant without the benefit of a plea agreement entered into with the Government." *United States v. Booth*, 432 F.3d 542, 543 n.1 (3d Cir. 2005) (citation omitted).

or response" to the offense level and criminal history category. She responded, "No, Your Honor, subject to my argument for departure, which I have preserved for the Court's consideration."

The district court next considered Mansfield's argument for departure and discussed the range of factors it would use to determine his sentence. Among other things, the court referenced the parties' statements, the sentencing memorandum, the probation officer's input, and the 18 U.S.C. § 3553(a) factors. It highlighted considerations related to the § 3553(a) factors, such as the presence of two young girls at the drug bust, the current drug epidemic, past leniency during sentencing, evidence of Mansfield's desire to improve, and the potential effects of COVID-19 on Mansfield's health. In this discussion, the court made only a brief, two-sentence reference to Mansfield's arrest history:

> I look at the history and characteristics of the defendant; and you do have a very long history, Mr. Mansfield. And in all of these convictions and arrests, arrests that included—that were not reduced to judgments but included domestic battery, intimidation felony, battery, neglect of a dependent, many resisting law enforcement.

Circumstances warranted a sentence at the upper end of the guideline range, the district court noted, yet it pronounced a sentence of 188 months' imprisonment, a term at the very bottom of Mansfield's guideline range. The court explained that this sentence was "sufficient but not greater than necessary to protect the public from further crimes of the defendant, to reflect the seriousness of the offense, and to afford

adequate deterrence to criminal conduct." The court then asked Mansfield's counsel whether she had a "legal objection to the [proposed] sentence" or a request for "any further elaboration … under [§] 3553(a) as to the length of imprisonment or as to the length and/or conditions of supervised release." Once again, Mansfield's counsel stated she had none.

In imposing the sentence, the district court asked whether Mansfield had "[a]nything further." For the final time, Mansfield's counsel responded she did not. Mansfield appealed later that day and before us challenges only his sentence.

## II

First, we address Mansfield's argument that *United States v. Esposito*, 1 F.4th 484 (7th Cir. 2021), supports de novo review of his sentence. We disagree.

Jeffrey Esposito was convicted of multiple counts of sexually exploiting a child and possessing child pornography. *Id.* at 485. At his sentencing hearing, the district court "pronounced Esposito's sentences, count by count, imposing six 30-year sentences to be served consecutive to each other, followed by fifteen 20-year sentences to be served concurrent with each other but consecutive to the 30-year sentences." *Id.* at 486. In total, Esposito was sentenced to 200 years in prison. *Id.* Following this pronouncement, the district court asked Esposito if he had an objection to the proposed sentence or a "request [for] any further elaboration of [the court's] reasons under Section 3553(a) as to the length of imprisonment or as to the length and/or conditions of supervised release." *Id.* at 486–87. Esposito "did not object" to the court's sentencing method but sought and received "clarification of the

consecutive-versus-concurrent aspect of the sentences and how the 200 years was calculated." *Id.* at 486.

On appeal, Esposito argued the district court's decision should be reviewed de novo because his challenge was procedural. *Id.* (citing *United States v. Ballard*, 950 F.3d 434, 436 (7th Cir. 2020); *United States v. Pennington*, 908 F.3d 234, 238 (7th Cir. 2018)). Our court agreed with his characterization and held that de novo review was proper under the circumstances. *Id.* at 487. Specifically, we reasoned that Esposito's disputes were "properly characterized as a procedural error" because they challenged the court's pronouncement and explanation of his sentence. *Id.* (citing *Gall v. United States*, 552 U.S. 38, 51 (2007); *Pennington*, 908 F.3d at 238).

As this court has concluded, "courts only elicit waiver when they ask specific questions—like whether the defendant is satisfied with the court's treatment of their main arguments in mitigation—not generalized inquiries about whether the defendant was confused or had anything else to say." *Esposito*, 1 F.4th at 486 (citing *United States v. Speed*, 811 F.3d 854, 857–58 (7th Cir. 2016); *see also United States v. Mzembe*, 979 F.3d 1169, 1173 (7th Cir. 2020) ("A general invitation for objections or asking, 'anything else?' at the end of the hearing is not sufficient, however, to show a waiver of challenges to the sufficiency of an explanation.")). The district court's inquiry at the end of Esposito's sentencing hearing was best characterized as a "broad," although "not completely general," question. *Id.* at 486.

The circumstances here differ substantially from those in *Esposito*. Mansfield had many opportunities throughout his case and at the sentencing hearing to object or to seek clarification. He was asked specifically whether he had any

objection or response to the presentence investigation report, the offense level and criminal history category, or the proposed sentence. Each time his counsel stated she had none. In contrast, Esposito asked for clarification about a complicated combination of concurrent and consecutive sentences *after* those sentences were pronounced. Neither Esposito nor his counsel could have sought this clarification before the district court made its pronouncement.

The circumstances here did not involve the type of procedural error challenged in *Esposito*, so we decline Mansfield's request for de novo review.

## III

We next consider whether Mansfield waived his right to challenge the use of his arrest history during sentencing. Waiver is the intentional relinquishment of a known right. *United States v. Flores*, 929 F.3d 443, 447 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 504 (2019).[3] When a defendant waives an argument—"for example, when he states on the record that he has no objection to the pre-sentence report—he waives the right to appeal." *United States v. Robinson*, 964 F.3d 632, 639–40 (7th Cir. 2020) (citing *United States v. Staples*, 202 F.3d 992, 995 (7th Cir. 2000) ("Waiver extinguishes the error and precludes appellate review.")). Forfeiture "comes about through neglect." *Staples*, 202 F.3d at 995. We review a forfeited argument for "plain error only." *Robinson*, 964 F.3d at 640 (citation omitted).

---

[3] Before issuing its decision, the panel in *Flores* "invoked Circuit Rule 40(e) and circulated the opinion to all judges in active service, and no judge voted to hear the case en banc." *United States v. Withers*, 960 F.3d 922, 929 n.7 (7th Cir. 2020) (citing *Flores*, 929 F.3d at 450 n.1).

In *United States v. Robinson*, we explained that even though "'a lawyer's statement that a defendant has no objection to the PSR does not *automatically* constitute a waiver,' we consider it in light of the surrounding circumstances and the record as a whole to determine whether counsel and the defendant made a knowing and intentional decision." *Id.* at 641 (quoting *United States v. Garcia*, 580 F.3d 528, 542 (7th Cir. 2009)). In making this determination, we consider express statements of waiver, as well as evidence of acquiescence. *Id.*

There is "no rigid rule for finding waiver in acquiescence." *Id.* (quoting *United States v. Anderson*, 604 F.3d 997, 1001 (7th Cir. 2010)). Such a finding "often requires some conjecture." *Id.* at 641–42 (citing *Garcia*, 580 F.3d at 542). In *United States v. Staple*s, we held that the defendant "waived his right to appeal the calculation of his criminal history" because "[d]espite being provided advance notice of the PSR's contents and an opportunity to object before and during the sentencing hearing, [he] and his counsel did not." 202 F.3d at 995. In other words, an affirmative decision not to object when one knows the contents of the PSR "shows intent to waive the right, not ignorance or neglect of the right." *Id.*

We also consider "whether the lack of an objection could have been tactical or strategic." *Robinson*, 964 F.3d at 641 (citing *United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005)). Our court "will find waiver 'if the defendant had a strategic reason to forego the argument, that is, only if the defendant's counsel would not be deficient for failing to raise the objection.'" *Id.* at 642 (quoting *United States v. Allen*, 529 F.3d 390, 395 (7th Cir. 2008)). But "[i]f the government cannot proffer any strategic justification for a defendant's omission, we will presume an inadvertent forfeiture rather than an

intentional relinquishment." *Id.* (citing *United States v. Moody*, 915 F.3d 425, 429 (7th Cir. 2019)). In short, "[a]lthough we construe waiver principles liberally in favor of the defendant, we have time and again found waiver … where a defendant or his counsel either concurs with the facts found in a pre-sentence report, or expressly declines to make an objection to those facts at sentencing, or both." *Id.* at 642–43 (citation omitted) (collecting cases).

The question, then, is whether Mansfield waived his challenge to the court's consideration of his arrest history at sentencing. Mansfield raises this challenge for the first time on appeal. At no point in the previous proceedings did he ever object on this topic. That failure was not for lack of opportunity. Before his sentencing hearing, Mansfield filed a Notice of Request for Departure Due to Role Reduction at Sentencing, as well as a sentencing memorandum. Neither of these filings challenged the accuracy of the presentence investigation report or its inclusion of his arrest history.

At his sentencing hearing, Mansfield's counsel represented that she and Mansfield had reviewed and discussed the PSR. She also made several statements constituting express waiver. The district court directly asked whether Mansfield had (1) any objection to the PSR, (2) "any objection or response" to the court's calculation of the offense level and criminal history category, and (3) any "legal objection to the [proposed] sentence." Each time, Mansfield's counsel stated she had no objection. These express denials, combined with the missed opportunities, constitute waiver.

The government has also proffered a strategic justification for Mansfield to forego his argument before the district court. Raising Mansfield's arrest history—which included 26

arrests—would have highlighted his risk of recidivism. That arrest history was a bad fact. So, Mansfield's counsel appears to have made a strategic decision to focus on arguments for a downward departure, rather than draw the district court's attention to Mansfield's criminal history. Indeed, in the end, the court sentenced Mansfield to a prison term at the very bottom of the guideline range. In *United States v. Brodie*, this court recognized that "when [a] defendant selects among arguments as a matter of strategy, he also waives those arguments he decided not to present." 507 F.3d 527, 531 (7th Cir. 2007) (citations omitted). The government's contention fits squarely within this precedent.

For these reasons, we hold that Mansfield waived his challenge in the district court.

## IV

Even if we were to conclude that Mansfield did not waive this challenge, then at the least he forfeited his objection to the district court's consideration of his arrest history in the PSR. We review a forfeited objection for plain error.[4] *See* FED. R. CRIM. P. 52(b); *Robinson*, 964 F.3d at 640. Under this standard, Mansfield must "show: (1) an error; (2) that is plain; (3) that affected his substantial rights, meaning there is a reasonable probability that the error changed the outcome of the trial; and (4) that 'had a serious effect on the fairness, integrity or

---

[4] Even when an issue may have been waived, in some decisions we have considered forfeited arguments and reviewed for plain error. *See, e.g.*, *United States v. Freed*, 921 F.3d 716, 720 (7th Cir. 2019) (reviewing defendant's objection to jury instructions for plain error after his failure to object at jury instruction conference); *United States v. Groce*, 891 F.3d 260, 269 (7th Cir. 2018) (same); *Anderson*, 604 F.3d at 1002 (reviewing challenge to sentence for plain error after defendant's counsel accepted PSR).

public reputation of judicial proceedings.'" *United States v. Julius*, 14 F.4th 752, 755 (7th Cir. 2021) (quoting *Greer v. United States*, 141 S. Ct. 2090, 2096–97 (2021)).

Here, the first requirement—whether there was an error—determines the outcome. To decide that, initially we review if and when a criminal defendant's prior arrests may be considered at sentencing. Then, we judge whether the district court erred when it considered Mansfield's arrest history.

**A**

The text of relevant statutes, the U.S. Sentencing Guidelines, and this court's precedent form the legal framework under which a district court may consider a defendant's arrest history during criminal sentencing.

As always, our analysis begins with the text of the statute. *Hughey v. United States*, 495 U.S. 411, 415 (1990); *Loja v. Main St. Acquisition Corp.*, 906 F.3d 680, 683 (7th Cir. 2018). Title 18 U.S.C. § 3553(a) states in relevant part:

> **Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> > **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant.

*See also* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and

conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). Thus, § 3553(a) requires that courts consider "the history and characteristics of the defendant" before sentencing. This factor—taken with the other § 3553(a) factors—helps a district court determine "whether the sentence is unreasonable." *United States v. Booker*, 543 U.S. 220, 261 (2005).

The U.S. Sentencing Guidelines provide insight into the proper use of a defendant's arrest history. The once-mandatory Guidelines now serve as an "advisory yet still important" resource for district courts. *United States v. Vasquez-Abarca*, 946 F.3d 990, 994 (7th Cir. 2020); *see also Booker*, 543 U.S. at 233–37. As the Supreme Court has explained, "sentencing judges have discretion under § 3553(a) to give non-guideline sentences for reasons specific to the defendant or based on policy disagreements with the Guidelines." *Vasquez-Abarca*, 946 F.3d at 994 (citations omitted). In fact, a sentencing judge will "actually err" if he or she "presume[s] that a guideline sentence will be reasonable." *Id.* (citing *Rita v. United States*, 551 U.S. 338, 351 (2007); *Gall*, 552 U.S. at 50). But at sentencing, the judge must still "calculate the guideline range correctly, and failure to do so will be a 'plain error' that will often need to be corrected on appeal even if no objection was made in the district court." *Id.* (citations omitted).

The 2018 Sentencing Guidelines Manual—the version in effect when Mansfield was sentenced—addresses how a defendant's arrest history may be considered. It states in pertinent part:

> **(2)** Types of Information Forming the Basis
> for Upward Departure.—The information

> described in subsection (a)(1) may include in-
> formation concerning the following:
>
> …
>
> **(E)** Prior similar adult criminal conduct
> not resulting in a criminal conviction.
>
> **(3)** Prohibition.—A prior arrest record itself
> shall not be considered for purposes of an up-
> ward departure under this policy statement.

U.S.S.G. § 4A1.3(a). So, the Guidelines support reliance on similar adult criminal conduct but prohibit considering a "prior arrest record itself" for purposes of an upward departure. *Id.* § 4A1.3(a)(3). Importantly, though, this "prohibition" is a nonbinding policy statement. District courts may consider the Guidelines while conducting the § 3553(a) analysis, but their "failure to do so is not grounds for reversal." *United States v. Drain*, 740 F.3d 426, 431–32 (7th Cir. 2014).

This court has ruled as to when a defendant's prior arrests may be considered in several decisions. In *United States v. Guajardo-Martinez*, we made clear that a "district judge has wide discretion to consider a defendant's background at sentencing." 635 F.3d 1056, 1059 (7th Cir. 2011) (citing 18 U.S.C. § 3661). This discretion is confined by the Fifth Amendment's Due Process Clause, which requires that the "information used for sentencing be accurate." *Id.* (citing *United States v. Tucker*, 404 U.S. 443, 447 (1972)). Therefore, a judge "may consider information only if it has 'sufficient indicia of reliability to support its probable accuracy.'" *Id.* (quoting *United States v. Hankton*, 432 F.3d 779, 790 (7th Cir. 2005)). A court "may not rely" on arrest history "itself in deciding on a sentence or in imposing an upward departure," but it "may still consider the

underlying conduct detailed in arrest records where there is a sufficient factual basis for the court to conclude that the conduct actually occurred." *Id.* (citations omitted).

One year later, in *United States v. Lopez-Hernandez*, a defendant argued the district court improperly considered "41 arrests that did not lead to convictions," without first determining that he "actually engaged in the conduct for which he had been arrested." 687 F.3d 900, 901–02 (7th Cir. 2012). The district court stated that it imposed a sentence at the top of the guideline range because of the defendant's "extraordinary criminal history, especially the number of arrests for serious offenses that did not lead to convictions." *Id.* at 902. This court used *Lopez-Hernandez* as an opportunity to clarify the holding in *Guajardo-Martinez*, which had held that "a sentencing court may not rely on the prior arrest record *itself* in deciding on a sentence." *Id.* (citations omitted) (quoting *Guajardo-Martinez*, 635 F.3d at 1059). But the "italicized [word] is key, because" a "court may still consider the underlying conduct detailed in arrest records" so long as it is reliable. *Id.* (quoting *Guajardo-Martinez*, 635 F.3d at 1059). Thus, a district court may consider arrest history during sentencing when "police reports … supply 'underlying facts' which at least arguably contain reliable information about [the defendant's] prior similar adult conduct" and the defendant has "failed to object to [those] underlying facts." *Id.* (citations omitted) (quoting *United States v. Terry*, 930 F.2d 542, 546 (7th Cir. 1991)).

In *United States v. Drain*, we considered whether the district court violated the Fifth Amendment's Due Process Clause when it sentenced a defendant "based on unfounded speculation that his unadjudicated arrests stemmed from

actual criminal activity." 740 F.3d at 432. We explained "that [d]ue process requires that courts base their sentencing decisions on reliable information." *Id.* (citation omitted). Unadjudicated arrests may present a due-process problem when "the arrests do not reflect reliable information of wrongdoing." *Id.* (quoting *Guajardo-Martinez*, 635 F.3d at 1059).

*Drain* reaffirmed that "a substantial history of arrests, especially if they are similar to the offense of conviction, can be a reliable indicator of a pattern of criminality, suggesting a recidivism risk, and may be considered in weighing the sentencing factors under § 3553(a)." *Id.* (citations omitted). The *Drain* case was "one of those 'situations where the number of prior arrests, and/or the similarity of prior charges to the offense of conviction, becomes so overwhelming and suggestive of actual guilt that they become exceedingly difficult to ignore.'" *Id.* (quoting *United States v. Berry*, 553 F.3d 273, 284 (3d Cir. 2009), *cited with approval in Lopez-Hernandez*, 687 F.3d at 904).

In sum, the relevant sentencing statutes, the U.S. Sentencing Guidelines, and our precedent establish that a district court may consider a defendant's arrest history during sentencing, provided that the information is reliable. Reliability can be shown by "the number of prior arrests" or "the similarity of prior charges to the offense of conviction." *Id.* at 432 (internal quotation marks and citation omitted). We apply this rule with deference. A district court is best positioned to make reliability determinations based on facts such as the number, nature, and resolution of a defendant's prior arrests, and to make a record of its decisions and its reasons therefor.

**B**

Under this legal framework, we conclude the district court did not err in considering Mansfield's arrest history.

As explained above, "a substantial history of arrests, especially if they are similar to the offense of conviction, can be a reliable indicator of a pattern of criminality, suggesting a recidivism risk, and may be considered in weighing the sentencing factors under" § 3553(a). *Drain*, 740 F.3d at 432. At least 13 of Mansfield's 26 arrests were related to narcotics, firearms, battery, intimidation, resisting law enforcement, or escape charges. This number of arrests, and their similarity to the offense of conviction, is consistent with our case law. *See, e.g., id.* at 428, 431, 433 (upholding an above-guidelines sentence based on 31 prior arrests); *Lopez-Hernandez*, 687 F.3d at 901–04 (upholding a sentence at the top of the guideline range that was based, in part, on the defendant's 41 prior arrests); *Guajardo-Martinez*, 635 F.3d at 1058 (upholding the district court's below-guidelines sentence and determining the defendant was not prejudiced, even though two of the three arrests listed in the presentence investigation report were unreliable); *United States v. Walker*, 98 F.3d 944, 947–48 (7th Cir. 1996) (upholding, pre-*Booker*, an upward departure because the defendant was not prejudiced by the district court's improper reliance on 23 prior arrests).

Further, reviewing courts should "expect more of an explanation for a non-guideline sentence than for a within-guideline sentence." *Vasquez-Abarca*, 946 F.3d at 994 (citing *Peugh v. United States*, 569 U.S. 530, 542 (2013)). Here, the district court imposed a sentence at the very bottom of the guideline range. As a result, we do not expect the detailed explanation that we would in *Lopez-Hernandez* or *Drain*. We can

therefore say that "[a]lthough the presentence investigation report did not describe the underlying facts of the unadjudicated arrests, the district court could reasonably rely on [Mansfield's] long arrest record in combination with his adjudicated criminal history as a part of its holistic evaluation of the § 3553(a) factors." *Drain*, 740 F.3d at 433.

Finally, Mansfield argues an affirmance will create a circuit split with the First, Third, and Fifth Circuits. We disagree. This court has already addressed the majority of out-of-circuit cases Mansfield cites. In *Lopez-Hernandez*, we explained that we had "no quarrel" with the Third Circuit's statement "that 'unsupported speculation about a defendant's background is problematic.'" 687 F.3d at 903–04 (quoting *Berry*, 553 F.3d at 281). Nor did we have issue with its "statement that a 'bare arrest record' is an inadequate ground for a sentence adjustment." *Id.* at 904 (quoting *Berry*, 553 F.3d at 284). In fact, both the Third and Fifth Circuits agree with the holding in *Drain*. *Id.* (citing *Berry*, 553 F.3d at 284); *see also United States v. Johnson*, 648 F.3d 273, 278 (5th Cir. 2011) (citing with approval the passage from *Berry*).

*Lopez-Hernandez* also addressed the First Circuit precedent cited by Mansfield—*United States v. Zapete-Garcia*, 447 F.3d 57 (1st Cir. 2006). Our court distinguished *Zapete-Garcia* because the defendant in that case "was arrested only a single time, more than a decade ago." *Lopez-Hernandez*, 687 F.3d at 904 (quoting *Zapete-Garcia*, 447 F.3d at 60–61).[5] The remaining circuit decision we must address—*United States v. Mateo-Medina*,

---

[5] In *Zapete-Garcia*, the First Circuit acknowledged that "a series of past arrests might legitimately suggest a pattern of unlawful behavior even in the absence of convictions." 447 F.3d at 61.

845 F.3d 546 (3d Cir. 2017)—is distinguishable for the same reason. *Id.* at 552 (noting that it "strain[ed] credulity to argue" that a fifteen-year-old DUI and a passport violation constituted an "extensive interaction with the criminal justice system"). So, the First, Third, and Fifth Circuits' precedents are consistent with our ruling today, both in theory and in application.

The number of arrests and similarity of charges in Mansfield's case are "so overwhelming and suggestive of actual guilt that they become exceedingly difficult to ignore." *Drain*, 740 F.3d at 432 (citations omitted). Thus, the district court did not err in considering Mansfield's arrest history.

## V

Mansfield waived his challenge to the district court's consideration of his arrest history at sentencing. In the alternative, the district court did not err when it considered his arrest history, which was sufficiently reliable given the number of prior arrests and the similarity of previous charges. We therefore AFFIRM Mansfield's sentence.