In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 16-3872

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JESUS SANCHEZ-LOPEZ,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:16-cr-00061-wmc-1 — **William M. Conley**, *Judge.*

_____

ARGUED APRIL 26, 2017 — DECIDED JUNE 2, 2017

_____

Before WOOD, *Chief Judge*, and RIPPLE and SYKES, *Circuit Judges*.

PER CURIAM. Jesus Sanchez-Lopez pleaded guilty to unauthorized presence in the United States after removal, *see* 8 U.S.C. § 1326(a), and was sentenced to twenty-four months' imprisonment—a term ninety days above the properly calculated guidelines range. Mr. Sanchez-Lopez contends that the district court erred when, in an effort to deter future illegal reentry by Mr. Sanchez-Lopez, it deviated

from the Guidelines and sentenced him to a lengthier term than the sentence he had served the last time he was convicted of the same offense. Because the district court thoroughly explained its reasons and acted well within its discretion, we affirm the sentence.

# I

## BACKGROUND

Mr. Sanchez-Lopez came to the attention of immigration authorities after local police arrested him for retail theft at a Home Depot in June 2016. Mr. Sanchez-Lopez was indicted for illegally reentering the United States after removal, *see* 8 U.S.C. § 1326(a), and pleaded guilty shortly thereafter.

A probation officer compiled a report detailing Mr. Sanchez-Lopez's long history of criminal activity in and removal from the United States. He first entered the country without authorization and settled in Wisconsin in 1994. The majority of his convictions over the years were driving-related: four DUIs, one hit-and-run accident, and three charges of driving with a suspended license. His criminal history, however, also includes convictions for battery, sexually assaulting an eleven-year-old child, and criminal escape. Mr. Sanchez-Lopez first was removed in January 2010, but Border Patrol agents arrested him in Arizona only seven months later. Mr. Sanchez-Lopez was convicted of attempted reentry after removal, sentenced to eighteen months' imprisonment, and removed for the second time in November 2011.

Mr. Sanchez-Lopez told the probation officer that he had reentered the United States, despite the risk of criminal prosecution and removal, because his common-law wife suffered

serious work-related injuries and needed care. Mr. Sanchez-Lopez said that he returned to Wisconsin sometime in 2013 but could not remember the date. His wife told the district court that he had returned in January 2014. If Mr. Sanchez-Lopez returned to the United States *after* October 2013, his convictions for battery and sexual assault of a child fall outside the ten-year period factored into his criminal-history score. Taking a cautious approach, the probation officer excluded those convictions when calculating his criminal history category, but noted that the court might wish to consider those convictions nonetheless.

With respect to Mr. Sanchez-Lopez's offense, the probation officer employed a base offense level of eight, *see* U.S.S.G. § 2L1.2(a), and Mr. Sanchez-Lopez received a four-level upward adjustment because he had been removed after a conviction for a felony, *see id.* § 2L1.2(b)(1)(D). After a two-level decrease for acceptance of responsibility, *id.* § 3E1.1(a), Mr. Sanchez-Lopez's total offense level was ten. When combined with Mr. Sanchez-Lopez's criminal history category of IV, this yielded a guidelines range of fifteen to twenty-one months' imprisonment. If the judge had believed that Mr. Sanchez-Lopez entered the country during or before October 2013—and his convictions for battery and sexual assault thus factored in to his criminal-history score—his guidelines range would have been twenty-one to twenty-seven months.

The district judge began the sentencing hearing by expressing misgivings about the appropriateness of a sentence within the guidelines range:

> The difficulty that I'm having with that range is that the defendant has reentered after

receiving a sentence of 18 months from the District Court in Arizona. I understand, to the defendant's credit, that he reentered and has not offended, as far as we know, again. Hopefully that includes not drinking and not driving while drunk as well as no further battery offenses.

But I'm offsetting that against the fact that the defendant benefits by a favorable calculation … in terms of his criminal history as well as, as I say, the fact that it would seem some graduated penalty is appropriate for reentry, notwithstanding the defendant's representation that he did so solely to assist his girlfriend … .[1]

The Government then requested that the court sentence Mr. Sanchez-Lopez to twenty-one months' imprisonment, the top of the guidelines range, arguing that a graduated penalty is appropriate given his prior conviction for the same offense. Mr. Sanchez-Lopez's counsel made no specific sentencing recommendation to the court. Counsel pointed out, however, that Mr. Sanchez-Lopez had not been *convicted* of any new crimes since returning to the country (the retail theft charges having been dropped after he was picked up by immigration authorities) and urged the court to consider that his wife's illness prompted his return.

After a short allocution by Mr. Sanchez-Lopez, the court explained the rationale behind its decision to impose a twenty-four-month sentence. The court said it wanted to give Mr. Sanchez-Lopez some credit for having cared for his wife

---

[1] R.21 at 4–5.

after returning to the United States and for not having "engaged in at least serious criminal conduct."[2] But, the court explained, Mr. Sanchez-Lopez's inability to control himself while drinking made him a danger to society, and, according to the court, his "noble reason for returning" was offset by the seriousness of having reentered the country after twice being removed.[3] The court also considered Mr. Sanchez-Lopez's "very lengthy criminal record," including his convictions for battery and sexual assault of a child that, because of their age, were excluded from the guidelines calculation.[4] It then elaborated on its reason for deviating ninety days above the guidelines imprisonment range:

> As previously noted, the present offense is the defendant's second criminal conviction for illegal reentry after deportation. And having been sentenced to 18 months the first time, the Court is concerned about sending a message if not to those who reenter this country for lots of economic and other hardship reasons, at least sending a message to this defendant that he simply has to make a life in Mexico, notwithstanding whatever pulls there may be for him to attempt to return again to this country.

> Taking into consideration the nature of the offense as well as the defendant's personal history and characteristics, I am persuaded that a custodial sentence slightly above the guideline

---

[2] *Id.* at 11.

[3] *Id.*

[4] *Id.* at 12.

range is reasonable and no greater than necessary to hold the defendant accountable, protect the community, provide the defendant the opportunity for rehabilitative programs and achieve parity with the sentences of similarly-situated offenders.[5]

## II

## DISCUSSION

Mr. Sanchez-Lopez challenges the district court's ninety-day variance above his guidelines imprisonment range. Rather than attacking the sentence as substantively unreasonable, he argues that the court erred by taking into account his previous § 1326(a) sentence because "there is no recognized sentencing factor that a person must serve a higher sentence for a later offense … for no other reason than that it took place afterwards."[6] Mr. Sanchez-Lopez contends that the court failed to make an individualized assessment of the circumstances of his crime, but instead "treated the notion of incremental punishment as a general policy matter with scant regard for whether it was appropriate in this case."[7]

We cannot accept this contention. Right from the start the district judge told Mr. Sanchez-Lopez what troubled him about the guidelines range, then handled the hearing succinctly, crisply, and carefully. The court thoughtfully considered Mr. Sanchez-Lopez's personal characteristics, including

---

[5] *Id.* at 14–15.

[6] Appellant's Br. at 6–7.

[7] *Id.* at 11.

the nature of his previous convictions, the fact that he had not committed "serious offenses" since reentering, his reason for returning to Wisconsin, and the danger posed to society by his many arrests for drunk driving. But the court honed in on one particular concern in fashioning an appropriate sentence—the need to deter Mr. Sanchez-Lopez from continuing to enter the country illegally—and that decision was entirely proper given that 18 U.S.C. § 3553(a)(2)(B) specifically instructs sentencing courts to consider the need "to afford adequate deterrence to criminal conduct." *See United States v. Perez-Molina*, 627 F.3d 1049, 1050–51 (7th Cir. 2010) (affirming sentence more than double the guidelines range that was imposed based on "the particular need to deter [the defendant] from further reentry"); *United States v. Huffstatler*, 571 F.3d 620, 622, 624 (7th Cir. 2009) (rejecting reasonableness challenge to sentence substantially above guidelines range where district judge cited fact that previous sentences had not deterred defendant and need to protect society from future serious crimes). The district court acted well within its discretion in concluding that Mr. Sanchez-Lopez could best be deterred by serving a longer sentence than he received the last time he committed the same offense.[8]

---

[8] Furthermore, there is no presumption that an above-guidelines sentence is unreasonable, as long as the increase rests on factors particularized to the individual defendant. *See United States v. Hallahan*, 756 F.3d 962, 982 (7th Cir. 2014); *see also United States v. McKinney*, 543 F.3d 911, 913–914 (7th Cir. 2008) (affirming above-guidelines sentence where judge found explicitly that lower sentence would not provide adequate deterrence or sufficient punishment). The court was not required to specifically use the word *deterrence*, since it said more than enough to explain its reasoning.

Mr. Sanchez-Lopez also contends that the district court "simply ignore[d] the fact that the defendant had not committed a serious crime in the past decade."[9] That assertion is incorrect; the court stated specifically that "the only offset" to Mr. Sanchez-Lopez's long criminal history "is that he has not apparently committed a major crime since he returned" most recently.[10] More importantly, however, Mr. Sanchez-Lopez incurred three convictions for driving with a suspended license, his *fourth* DUI, and his previous illegal reentry conviction within ten years of this offense. We consider these "serious" crimes.

Mr. Sanchez-Lopez makes one additional argument, but it is not supported by the record. At sentencing, defense counsel asserted that Mr. Sanchez-Lopez's sentence should not exceed his previous term because, according to counsel, the guidelines ranges for § 1326(a) crimes had decreased in recent years and "it's probably likely that Mr. Sanchez-Lopez received a guideline sentence in Arizona."[11] Mr. Sanchez-Lopez now argues that the district court erred by failing to consider his argument that, under the current Guidelines, his 2010 sentence would have been lower, "thereby setting a lower baseline for any comparative sentence."[12]

The plea agreement from Mr. Sanchez-Lopez's 2010 conviction—which is publicly available—shows this assertion to be incorrect. Mr. Sanchez-Lopez entered into a "fast track" plea agreement pursuant to U.S.S.G. § 5K3.1, under which he

---

[9] Appellant's Br. at 10.

[10] R.21 at 7.

[11] *Id.* at 7–8.

[12] Appellant's Br. at 7.

benefited from a four-level reduction in his offense level.[13] Based on his criminal-history category of V (the battery and child sexual assault convictions were included at that time), the plea agreement bound the district court to an eighteen-month term of imprisonment. *See* Fed. R. Crim. P. 11(c)(1)(C). In other words, Mr. Sanchez-Lopez did not receive a guidelines sentence in 2010, as counsel contends, but instead took advantage of a substantial downward variance. He also benefited in the present case from the fact that the amendments to the 2016 Guidelines had not yet taken effect. Under those amendments, Mr. Sanchez-Lopez would have received a four-level increase for his previous § 1326(a) conviction, *see* U.S.S.G. § 2L1.2(b)(1)(A), which would have raised his guidelines range to twenty-seven to thirty-three months—even with the "favorable calculation"[14] of his criminal-history score.

## CONCLUSION

The judgment of the district court is affirmed.

AFFIRMED

---

[13] *United States v. Sanchez-Lopez*, No. 4:10-cr-02209-RCC-JCG (D. Ariz Oct. 26, 2010) (Plea Agreement).

[14] R.21 at 4.