In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-3716

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CARLOS A. VASQUEZ-ABARCA,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:17-cr-50079-1 — **Philip G. Reinhard**, *Judge.*

ARGUED NOVEMBER 7, 2019 — DECIDED JANUARY 9, 2020

Before HAMILTON, SCUDDER, and ST. EVE, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Defendant Carlos Vasquez-Abarca appeals his sentence for reentering the United States illegally after a prior deportation following a felony conviction, in violation of 8 U.S.C. § 1326(a). The district court imposed a sentence of 72 months in prison, about twice the range of 30 to 37 months in prison advised by the Sentencing Guidelines. The sentence was well within the statutory limits and was a reasonable exercise of the judge's discretion under

18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220 (2005). The judge here also gave a sufficient explanation for the decision, see *Gall v. United States*, 552 U.S. 38, 50 (2007), based primarily on Vasquez-Abarca's criminal history and the fact that a previous sentence of 57 months for the same crime had not deterred him from committing the crime again. We affirm the sentence.

I.   *Factual and Procedural Background*

Vasquez-Abarca's parents brought him to the United States from Mexico in 1986, when he was about five years old. He has been deported from the United States on three prior occasions, in 1997, 2005, and 2015. His first encounter with law enforcement in the United States came in 1995—at the age of 14—when he was arrested for having sex with a 12-year-old. For reasons that are not clear, Vasquez-Abarca evidently told Illinois authorities that he was either 16 or 17 years old. Based on that age difference, he was convicted of a felony sex offense in June 1996. He was imprisoned in Illinois and then deported to Mexico for the first time on July 25, 1997.

Soon after that deportation, Vasquez-Abarca reentered the United States illegally. Less than two months later, he was arrested in Chicago for disorderly conduct. (That charge was dismissed, apparently without any immigration consequences.) In July 2001, he was still living in Illinois and was convicted of failing to register as a sex offender. Later in 2001, federal immigration agents arrested Vasquez-Abarca. He was charged in the Northern District of Illinois with reentering the country illegally in violation of 8 U.S.C. § 1326(a). He pleaded guilty and was sentenced in 2002 to 57 months in prison, the lower limit of the guideline range. After serving that sentence, he was deported for a second time on December 2, 2005.

Vasquez-Abarca entered the United States again in June 2006. In the following years, he committed about a dozen driving-related offenses in Illinois and Georgia, including various moving violations and driving without a valid license. His repeated traffic violations culminated in August 2012 in two felony convictions in Georgia and a one-year term of imprisonment. On December 19, 2013, shortly after his release from a Georgia prison, he was sentenced in the Northern District of Illinois to an additional 24 months in prison for violating the terms of his supervised release on the 2002 conviction for illegal reentry. After serving that supervised release revocation sentence, he was deported for a third time on May 19, 2015.

Vasquez-Abarca committed the crime of conviction here when he illegally entered the United States again around January 2016. He moved to Rochelle, Illinois, where he found work remodeling homes. But he still had an outstanding Illinois warrant from 2007 for giving the police a fake name and driver's license. He was arrested on that warrant on April 8, 2017. That October he was convicted of the felony of obstructing justice. The state court sentenced him to time served, but Vasquez-Abarca was then taken into federal custody and indicted again for illegally reentering the United States after a prior deportation following a felony conviction, in violation of 8 U.S.C. § 1326(a) and (b)(1).

Vasquez-Abarca ultimately pleaded guilty to the charge. At the sentencing hearing, the government asked for a sentence within the guideline range of 30 to 37 months. The defense requested a below-guideline sentence of 24 months, arguing that Vasquez-Abarca's driving violations stemmed from his lack of legal residency status. The district court,

however, imposed a sentence of 72 months. The statute authorized a sentence of up to 20 years. 8 U.S.C. § 1326(b)(2). The only questions on appeal are whether the district court gave a sufficient explanation for the 72-month sentence and whether the sentence was substantively reasonable.[1]

II.  *Analysis*

We review the substantive reasonableness of a sentence for abuse of discretion. *Gall*, 552 U.S. at 46; *United States v. Carter*, 538 F.3d 784, 789 (7th Cir. 2008). The district court must explain the sentence in terms of the factors set forth in 18 U.S.C. § 3553(a). See 18 U.S.C. § 3553(c). The judge "should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). The explanation need not be "exhaustive" but must be "adequate to allow for meaningful appellate review." *Carter*, 538 F.3d at 789 (quotation omitted). The court here gave three reasons for the above-guideline sentence: Vasquez-Abarca's extensive criminal history, the need to deter him from further illegal reentries, and protecting the public from the perils of unlicensed driving.[2]

---

[1] The indictment cited 8 U.S.C. § 1326(b)(1), which authorizes a penalty of only 10 years' imprisonment. But since Vasquez-Abarca's sexual abuse conviction was an aggravated felony, he was eligible for a higher maximum of 20 years under § 1326(b)(2). The Supreme Court has held that § 1326(b)(2) sets forth a sentencing factor, not a separate crime, so it need not be specified in the indictment. See *Almendarez-Torres v. United States*, 523 U.S. 224, 226–27 (1998).

[2] The court rejected Vasquez-Abarca's request for a downward departure based on cultural assimilation and time served in state custody. He does not raise those issues on appeal.

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court remedied the Sixth Amendment problems with mandatory Sentencing Guidelines by making them advisory. "Mandatory" and "advisory" serve as shorthand descriptions of different standards of review for non-guideline sentences ("departures" under the Guidelines, and often called "variances" after *Booker*). Since *Booker*, the Supreme Court and lower federal courts have worked to maintain an appropriate and constitutional balance that keeps the Guidelines advisory yet still important.

On the "advisory" side of the balance, the Supreme Court has taught that sentencing judges have discretion under § 3553(a) to give non-guideline sentences for reasons specific to the defendant or based on policy disagreements with the Guidelines. *Pepper v. United States*, 562 U.S. 476, 501 (2011); *Kimbrough v. United States*, 552 U.S. 85 (2007); *Gall*, 552 U.S. at 50–51. Sentencing judges actually err if they presume that a guideline sentence will be reasonable. *Rita*, 551 U.S. at 351; *Gall*, 552 U.S. at 50. The now-advisory Guidelines also are not subject to vagueness challenges. *Beckles v. United States*, 137 S. Ct. 886 (2017).

On the "important" side, the sentencing judge must calculate the guideline range correctly, *Gall*, 552 U.S. at 49, and failure to do so will be a "plain error" that will often need to be corrected on appeal even if no objection was made in the district court. *Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2018); *Molina-Martinez v. United States*, 136 S. Ct. 1338 (2016). Similarly, because of the presumed "anchoring" effect of the advisory Guidelines, the sentencing judge may not apply harsher Guidelines adopted after the offense, *Peugh v. United States*, 569 U.S. 530 (2013), even though the judge is free to

consider later, harsher Guidelines by treating them as giving different advice, *id*. at 549; see also *id*. at 558 (Thomas, J., dissenting) (district judge remains free to consider range produced under amended Guidelines).

Key to this balance are the procedural steps of requiring a correct calculation of the Guidelines and having reviewing courts expect more of an explanation for a non-guideline sentence than for a within-guideline sentence. See *Peugh*, 569 U.S. at 542. As the Court explained in *Gall*, "a major departure should be supported by a more significant justification than a minor one." 552 U.S. at 50. If a judge "decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* Nevertheless, the sentencing court may still explain the sentence in terms of the statutory factors alone: "the sentencing court need not frame its explanation of a sentence in terms of a departure from the guidelines range." *United States v. Kuczora*, 910 F.3d 904, 908 (7th Cir. 2018).

Applying these general principles to this case, we conclude that the district court sufficiently explained the 72-month sentence and that the sentence was not substantively unreasonable for Vasquez-Abarca. First, the court cited Vasquez-Abarca's extensive criminal history. See 18 U.S.C. § 3553(a)(1) (directing courts to consider "the history and characteristics of the defendant"). The court correctly observed that Vasquez-Abarca illegally reentered after each of his three deportations. The court also noted that he had six prior felony convictions. Notably, Vasquez-Abarca's criminal history calculation under the Guidelines did not fully reflect this history. The 2006 illegal reentry was never charged, and

two of the felony convictions were more than fifteen years old and did not count under the Guidelines. See U.S.S.G. § 4A1.2(e)(1) (time limit for counting prior convictions); § 4A1.3 (encouraging upward departures if criminal history category substantially underrepresents seriousness of full history or likelihood that defendant will commit other crimes). The district court was entitled to consider the defendant's full criminal history and to impose a sentence tailored to his record.

Second, the district court focused in particular on Vasquez-Abarca's prior 57-month sentence for the same crime: illegal reentry after deportation after a criminal conviction. The court emphasized that the 57-month sentence had not deterred him from committing the same crime again. One key purpose of sentencing under 18 U.S.C. § 3553(a)(2)(B) is "to afford adequate deterrence." A sentencing court may consider previous sentences in assessing the level of needed deterrence. *United States v. Sanchez-Lopez*, 858 F.3d 1064, 1068 (7th Cir. 2017) ("The district court acted well within its discretion in concluding that [the defendant] could best be deterred by serving a longer sentence than he received the last time he committed the same offense."); see also U.S.S.G. § 4A1.3. Vasquez-Abarca's own statements lend support to the deterrence rationale. In his brief allocution, he emphasized his desire to remain in the United States, and earlier he had told the probation office that he did not think he had done anything wrong. The judge reasonably concluded that a longer sentence was needed to deter future reentries. We see nothing unreasonable in the judgment to move from the prior sentence of 57 months to 72 months. Under the Guidelines, that increase was comparable to a one-step increase in a defendant's criminal history category.

Third, the district court noted the danger that drivers without valid licenses and insurance pose to the public. The court also speculated that, since Vasquez-Abarca lacked legal status in the United States, he would be more likely to flee in the event of a traffic stop, further endangering the public. Vasquez-Abarca responds, reasonably enough, that he did not flee when the police stopped him in April 2017. Nevertheless, the court's general concern that unlicensed drivers endanger the public was not unreasonable. Cf. *Reitz v. Mealey*, 314 U.S. 33, 36 (1941) (upholding a license requirement based on the state's need "to insure competence and care on the part of its licensees and to protect others using the highway"). Different judges might view the factor differently, but given Vasquez-Abarca's extensive history of unlicensed driving, the district court did not abuse its discretion in thinking a higher sentence might contribute to protection of the public. See 18 U.S.C. § 3553(a)(2)(C) (citing the need "to protect the public from further crimes of the defendant"); *United States v. Jackson*, 547 F.3d 786, 793–94 (7th Cir. 2008) (upholding above-guideline sentence based in part on convictions for driving without a license, which showed "a flouting of the legal requirements of driving and a pattern of disregard for the punishment imposed by courts for those transgressions" and contributed to pattern of "disrespect for the law").

The district court adequately explained the sentence, which was not substantively unreasonable in this case.

AFFIRMED.