In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 21-2638

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMES ROGERS,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:19-cr-00308 — **Jane Magnus-Stinson**, *Judge.*

———————

ARGUED MAY 25, 2022 — DECIDED AUGUST 12, 2022

———————

Before RIPPLE, ROVNER, and JACKSON-AKIWUMI, *Circuit Judges*.

RIPPLE, *Circuit Judge.* Federal law prohibits James Rogers from possessing any firearms because of his previous felony convictions. Nevertheless, based on an investigation in July of 2019, law enforcement concluded that he had enlisted an accomplice to purchase firearms for him. A jury subsequently convicted him of two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). The district court

then sentenced him to 70 months' imprisonment. For the reasons set forth in this opinion, we now affirm the judgment of the district court.

# I

## BACKGROUND

On July 12, 2019, Mr. Rogers, along with a friend, A.W., went to the Rural King store in Bedford, Indiana. The store's video surveillance system recorded Mr. Rogers as he handled multiple firearms, including a Mossberg shotgun. The video recorded his holding the Mossberg for less than a minute before handing it back to the Rural King sales employee. The employee then placed it under the counter. A few minutes later, A.W. went to the sales counter, indicated that she wanted to purchase the Mossberg, provided her ID, and filled out a Form 4473. The Rural King manager came from the back of the store, carrying a box with a Mossberg shotgun in it. A.W. paid for the shotgun, and the manager walked both her and Mr. Rogers to the parking lot.

One week later, Mr. Rogers and A.W. went to another Rural King in Bloomington, Indiana. Again, Mr. Rogers approached the gun counter by himself and inspected several firearms, including a Sig Sauer 400 rifle. A.W. later joined him at the gun counter and purchased the rifle. The manager then escorted them out of the store.

Following these purchases, law enforcement officers received a tip that Mr. Rogers and A.W. were purchasing firearms with gift cards obtained from stolen merchandise that had been returned fraudulently to the store. While investigating the theft, the officers reviewed the security footage of the sales of the two firearms at the Rural King stores and

concluded that A.W. was purchasing the firearms for Mr. Rogers. A Bloomington Police officer interviewed A.W. and Mr. Rogers. During her interview, A.W. denied knowing the location of the Sig Sauer rifle. But Mr. Rogers, when interviewed by the same officer, told him that the rifle was under the couch in A.W.'s living room and noted that it was still inside the box. Bloomington police officers recovered the Sig Sauer rifle from that location. Officers also recovered the Mossberg shotgun from A.W.'s residence that same day.

On September 17, 2019, a grand jury charged Mr. Rogers with five counts: one count of conspiracy, two counts of aiding and abetting the making of a false statement to a licensed firearms dealer, and two counts of being a felon in possession of a firearm. The Government then filed a motion to dismiss without prejudice the first three counts of the indictment, and the district court granted the motion. Consequently, only the two counts of felon in possession were presented to the jury at trial. Mr. Rogers's first trial occurred in November 2020 but ended in a mistrial when the jury could not reach a unanimous verdict.

A second jury trial was held on July 13, 2021. In presenting its case, the Government first assumed that Count I (the Mossberg shotgun) charged Mr. Rogers with possessing the shotgun he was recorded holding in the surveillance video at the Bedford Rural King. But when Mr. Rogers's attorney cross-examined the store associate who had sold the Mossberg shotgun to A.W., it became evident that two separate Mossberg shotguns were involved in the Bedford incident: The first Mossberg was the one that Mr. Rogers personally handled; the second Mossberg was the one retrieved by the manager from the back of the store and sold to A.W. A law enforcement

witness admitted at trial that they were not aware that the in-
cident had involved two different Mossberg shotguns in the
store.[1]

At the close of the Government's case, Mr. Rogers moved
for the dismissal of Count I of the indictment under Rule 29.[2]
Mr. Rogers submitted that he, and the jury, were entitled to
know whether he was being charged with possessing the un-
purchased firearm that he had held in the store or the pur-
chased firearm that left the store (identified as Government
Exhibit 2 at trial). He expressed the concern that some jurors
might convict him for solely possessing the gun that he had
held in the store while others might convict him of jointly pos-
sessing the gun that was purchased. The Government simply
responded that the indictment charged Mr. Rogers with pos-
sessing "a Mossberg shotgun," which was still what the evi-
dence demonstrated.[3]

After a colloquy with counsel, the district court deter-
mined that defense counsel had raised two separate concerns.
Counsel first suggested that the indictment was invalid be-
cause it was impossible to ascertain whether the grand jury
intended to accuse Mr. Rogers of possessing the gun that he
had handled at the counter or the gun purchased by A.W.

---

[1] R.121 at 121, 125.

[2] "A trial judge, upon a defendant's motion or on the judge's own initia-
tive, 'must enter a judgment of acquittal of any offense for which the evi-
dence is insufficient to sustain a conviction,' either after the government
has closed its evidence or after a jury has rendered a verdict or been dis-
charged." *United States v. Garcia*, 919 F.3d 489, 496 (7th Cir. 2019) (quoting
Fed. R. Crim. P. 29(a)).

[3] R.121 at 138; *see also* R.64.

shortly thereafter. Counsel also submitted that the indictment deprived him of due process of law because he had no notice of which alleged firearm possession he had to defend against.

The court addressed each of these arguments. With respect to the first argument, the court said that it was clear that the grand jury intended to indict Mr. Rogers with possession of the gun purchased by A.W. The court noted that, given the charges handed down by the grand jury—"all of that conspiracy and setting up the straw man"—it was clear that the grand jury focused on a theory of joint possession of the purchased Mossberg. The district judge explained "these guns were purchased with the female companion as a straw purchaser, and I think the Grand Jury, given that they did indict on those theories, kind of necessarily found joint possession, it seems to me."[4]

The district court then turned to the risk that Mr. Rogers had not been given adequate notice that the Government intended to proceed on the basis of the purchased gun. Characterizing the problem as one of duplicity,[5] it stated that, "it is the joining of two or more offenses in a single count because clearly here, the possession of the purchased Mossberg is different than the possession of the unpurchased Mossberg."[6] In order to avoid any unfairness from lack of notice, the court

---

[4] R.121 at 146–47.

[5] Although, as we discuss later on, the district court's characterization of the situation before it as one of duplicity is questionable, at least insofar as it was based on the existence of two guns rather than one, it certainly did not cause reversible error.

[6] *Id.* at 144.

then required the Government to choose which firearm it was going to prove in front of the jury: "[y]ou have to pick—less than picking a gun—you have to pick a possession that you're charging; and whether it is the one in the store or the joint possession, that is your call."[7] The Government chose to prove, under a theory of joint possession, that Mr. Rogers possessed the Mossberg purchased by A.W. In due course, the district court instructed the jury that in order to find Mr. Rogers guilty of Count 1, it had to find he "knowingly possessed a firearm; specifically, the firearm that is Exhibit 2," which was the Mossberg purchased by A.W.[8]

Following the rendition of the jury's verdict, the probation office prepared a Presentence Report ("PSR") for the sentencing hearing. That report recommended a base offense level of 20 under U.S.S.G. § 2K2.1(a)(4)(B) because Count II (the Sig Sauer count) involved a firearm capable of accepting a high-capacity magazine.[9] Mr. Rogers objected to the recommendation, stating that he did "not believe a high capacity magazine [was] involved in his case."[10] In his view, the jury's verdict was based on "what happened at the gun counter, which did

---

[7] *Id.* at 145.

[8] *Id.* at 159.

[9] "(a) Base Offense Level (Apply the Greatest): (4) 20, if— (B) the (i) offense involved a (I) semiautomatic firearm that is capable of accepting a large capacity magazine; or (II) firearm that is described in 26 U.S.C. § 5845(a); and (ii) defendant (I) was a prohibited person at the time the defendant committed the instant offense; (II) is convicted under 18 U.S.C. § 922(d); or (III) is convicted under 18 U.S.C. § 922(a)(6) or § 924(a)(1)(A) … ." U.S.S.G. § 2K2.1(a)(4)(B).

[10] R.106.

not include any kind of a magazine whatsoever."[11] He did not believe that his base offense level should be increased by six points because "someone else later came and purchased a gun that did have a magazine on it."[12] The Government responded that it presented evidence of joint possession of the Sig Sauer rifle for Count II and noted that a case agent confirmed that it was sold with a 30-round magazine. In its supplemental addendum to the PSR, the Probation Department also noted that the purchase of the high-capacity magazine was confirmed by the case agent.

The district court overruled Mr. Rogers's objection. It saw a clear connection between him and the Sig Sauer rifle, noting that he had provided specific instructions to law enforcement on where to find it and those instructions were correct. Thus, the court found that he had jointly possessed the gun that was purchased with a high-capacity magazine. Mr. Rogers was ultimately sentenced to 70 months' imprisonment. Mr. Rogers timely appealed his conviction and sentence.

---

[11] R.125 at 7.

[12] *Id.*

**II**

**DISCUSSION**

**A.**

**1.**

Focusing on the Mossberg count, Mr. Rogers now renews his argument that a constructive amendment of his indictment occurred at trial. Reminding us that "a defendant may be tried for a felony only on the charges the grand jury approved, as it approved them, and no others," *United States v. Leichtnam*, 948 F.2d 370, 375 (7th Cir. 1991), he submits that because the Government was unaware that two Mossberg shotguns were involved in the incident, the grand jury must have indicted him for the possession of the *unpurchased* Mossberg at the Bedford Rural King. The Government's evidence at trial, however, sought to prove his joint possession of the *purchased* Mossberg. Thus, in Mr. Rogers's view, the broad language of the indictment, the evidence offered at trial, the jury instructions, and the jury verdict form caused him to be tried and convicted on a charge never sanctioned by the grand jury.

The Government takes a different view. It responds that the indictment charged Mr. Rogers with possessing "one Mossberg shotgun" on or about July 12, 2019, and that language naturally encompasses any form of possession of a Mossberg shotgun. Thus, the Government contends that "[a]t worst, this case involves a harmless variance."[13]

---

[13] Appellee's Br. 16.

"A constructive amendment to an indictment occurs when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury." *United States v. Cusimano*, 148 F.3d 824, 829 (7th Cir. 1998) (citation omitted).

> An indictment that is constructively amended at trial violates the Constitution because the Fifth Amendment requires an indictment of a grand jury to guarantee that the allegations in the indictment and the proof at trial "match in order to insure that the defendant is not subject to a second prosecution, and to give the defendant reasonable notice so that he may prepare a defense."

*United States v. Trennell*, 290 F.3d 881, 888 (7th Cir. 2002) (quoting *United States v. Folks*, 236 F.3d 384, 390 (7th Cir. 2001)). Thus, the indictment may not be broadened so as to present the trial jury with more or different offenses than what the grand jury charged. *See Leichtnam*, 948 F.2d at 377.

There was no broadening of the indictment here. The grand jury charged Mr. Rogers with possessing one Mossberg shotgun. At trial, it became apparent that the Bedford incident involved two Mossberg shotguns. Nevertheless, the record simply does not support the conclusion that the evidence at trial established a crime different from the one charged in his indictment. The indictment broadly charged that Mr. Rogers possessed a Mossberg gun in Bedford on a given date. The trial focused solely on whether that allegation was proven.

Mr. Rogers does not contest that the gun that he personally handled is within the ambit of the indictment. But, as the district court noted, the grand jury alleged a conspiracy charge, making it clear that it included within its allegation Mr. Rogers's constructive possession of the firearm finally purchased by A.W. By requiring that the Government choose between these two theories of possession, actual and constructive, the district court hardly expanded the scope of the indictment. Indeed, it narrowed it.

Moreover, the facts at trial did not substantially vary from the factual allegations in the indictment despite the revelation of the second Mossberg shotgun. The indictment asserted, and the evidence at trial showed, that: (1) Mr. Rogers had previous felony convictions; and (2) he possessed a Mossberg shotgun both in the store and after leaving the store. Mr. Rogers knew the material elements of the crime and that the government would try to establish that he possessed a Mossberg shotgun. The instructions given to the jury adequately apprised the members of the task before them. Although Mr. Rogers now suggests that other instructions were necessary or preferable, he never apprised the district court of his views, and, consequently, he waived his objections.

We previously have stated that "[t]he sufficiency of an indictment should be determined by practical rather than technical considerations." *Collins v. Markley*, 346 F.2d 230, 232 (7th Cir. 1965) (en banc) (noting that "every essential ingredient of the offense was charged" and the defendant "was sufficiently apprised of the nature of the charges against him"). Here, Mr. Rogers's offense under Count 1 was the possession of "any firearm" in violation of § 922(g). The jury unanimously agreed that he was a felon in possession of "any firearm" after

the district court instructed the jurors to consider the purchased Mossberg shotgun for Count 1. The district court's instructions obviated any question about adequate notice.

**2.**

Despite the district court's ruling, Mr. Rogers continues to maintain that the Mossberg Count is duplicitous. A charged count is "duplicitous if it 'charges two or more distinct offenses within the count.'" *United States v. O'Brien*, 953 F.3d 449, 454 (7th Cir. 2020) (quoting *United States v. Miller*, 883 F.3d 998, 1003 (7th Cir. 2018)). "However, an indictment charging multiple acts in the same count, each of which could be charged as a separate offense, may not be duplicitous where these acts comprise a continuing course of conduct that constitutes a single offense." *United States v. Buchmeier*, 255 F.3d 415, 421 (7th Cir. 2001).

At the outset, the Government contends that Mr. Rogers waived this argument because he was aware of the existence of the two guns prior to trial. "Rule 12(b)(3)(B)(i) of the Federal Rules of Criminal Procedure provides that any defect in the indictment—including 'joining two or more offenses in the same count (duplicity)'—that can be raised by pretrial motion must be so raised," and that failure to raise the issue before trial forfeits it unless there is "good cause" for the omission. *United States v. Nixon*, 901 F.3d 918, 920–21 (7th Cir. 2018) (citation omitted). Requiring such an objection before trial encourages the parties to brief the issue carefully, "rather than address[ing] a complex legal issue on the fly during a trial. It prevents game playing." *Id.* at 921. "If the indictment confused the defendant, the proper time to raise that objection was before trial, allowing the court an opportunity to correct the error and allowing the government to seek a superseding

indictment." *United States v. Davis*, 471 F.3d 783, 791 (7th Cir. 2006).

Mr. Rogers failed to raise the issue before trial despite his knowledge of the second Mossberg shotgun, and he even solicited the information from a witness at trial. Thus, he was fully aware there were two different Mossberg shotguns involved and was aware of the risk of a duplicitous charge. Because he failed to raise an objection before the district court prior to trial, under usual circumstances, we would hold this argument waived. Here, however, the district court, in addressing Mr. Rogers's constructive amendment argument, characterized the situation before it as a duplicity issue and resolved it on that basis. Under these circumstances, we are constrained to address it.

Turning to the merits, Mr. Rogers contends that his sole possession of the unpurchased Mossberg shotgun is a separate and distinct offense from the joint possession of the purchased Mossberg. The Government responds that Mr. Rogers's "entire conduct in relation to a Mossberg shotgun on July 12, 2019, was the basis of the charge" and that it "was all a single course of conduct."[14] "The fact that there was one Mossberg shotgun in the display and another that was purchased ultimately was not an essential part of the charge."[15]

In determining whether an indictment is fatally duplicitous, a court must determine whether the indictment gives the defendant ample notice of the allegation against which he must defend and whether the record produced in the

---

[14] Appellee's Br. 22.

[15] *Id.*

disposition of the case will protect the defendant adequately from double jeopardy. *See United States v. Berardi*, 675 F.2d 894, 899 (7th Cir. 1982) ("The dangers posed by a duplicitous indictment include … the defendant may not be adequately notified of the charges against him, that he may be subjected to double jeopardy, that he may be prejudiced by evidentiary rulings at trial, and that he may be convicted by a less than unanimous verdict.").

After the ruling of the district court, there can be no question about the adequacy of the notice afforded Mr. Rogers. Because the evidence at trial showed that there were two different Mossberg shotguns, the district judge perceived a risk of confusion and cured any error that may have come from it. The final jury instructions told the jury to determine whether "[t]he defendant knowingly possessed a firearm, specifically the firearm that is Exhibit 2."[16] Thus, the jury instruction narrowed the bases of conviction to the exact Mossberg shotgun the jury was to consider in deliberations. *Cf. United States v. Haldorson*, 941 F.3d 284, 297 (7th Cir. 2019) (rejecting a constructive amendment challenge where "[t]he jury instruction was tailored to the specifics of the indictment and did not permit the jury to convict [the defendant] based on non-indicted [firearms]"). Because the district judge unambiguously instructed the jury that it had to find Mr. Rogers possessed the purchased Mossberg shotgun (Exhibit 2), the introduction of the unpurchased Mossberg shotgun in the video surveillance footage "did not afford the jury a broader basis on which to convict [Mr. Rogers] than the indictment allowed." *United States v. Mitchell*, 64 F.3d 1105, 1112 (7th Cir. 1995). The

---

[16] R.97-3 at 18.

record also makes clear that Mr. Rogers had adequate notice of the allegation against which he had to defend. *Cf. United States v. Ratliff–White*, 493 F.3d 812, 823 (7th Cir. 2007) (finding a harmless variance where the defendant was not deprived of an adequate opportunity to prepare a defense and was not exposed to a double jeopardy risk); *United States v. Kuna*, 760 F.2d 813, 819 (7th Cir. 1985) (same).

Nor do we believe that that Mr. Rogers faces a realistic possibility of double jeopardy. The courts of appeals have held that the unit of prosecution for a violation of 18 U.S.C. § 922(g) is "each transaction or acquisition by which he attempts to arm himself unlawfully." *Buchmeier*, 255 F.3d at 422–23. Here the Government charged broadly that Mr. Rogers had possessed a single Mossberg gun. It made no attempt to maintain that the possession of the display case gun was an offense different from the constructive possession of the substituted item purchased by A.W. on his behalf. Indeed, on appeal, it admits that the two activities, examining the display model and arranging for its purchase by a strawperson, involved a single course of conduct. As we noted in *Berardi*, 675 F.2d at 898, the "line between multiple offenses and multiple means to the commission of a single continuing offense is often a difficult one to draw. The decision is left, at least initially, to the discretion of the prosecution." Here, the Government made clear at oral argument that, in its view, Mr. Rogers committed a single offense involving a Mossberg gun. Thus, the record firmly protects Mr. Rogers against further prosecution.

**B.**

In preparation for Mr. Rogers's sentencing hearing, the PSR noted that, under the Sentencing Guidelines,[17] Mr. Rogers's base offense level was 20 because the Sig Sauer rifle was purchased with a high-capacity magazine. Prior to the hearing, Mr. Rogers objected to the base offense level, stating that he did "not believe a high-capacity magazine [was] involved in his case."[18] In the supplemental addendum to the PSR, the probation officer responded to his objection and noted that the purchase of the Sig Sauer rifle "included a 30-round magazine, which was confirmed by the case agent."[19]

On appeal, Mr. Rogers continues to assert that when he handled the rifle at the store, it did not have a high-capacity magazine in it or near it, and that there is no evidence that he constructively possessed the rifle when it did. As Mr. Rogers points out, there was no trial evidence demonstrating that A.W. purchased a high-capacity magazine at the store or that one was found in or near the rifle when it was located in her apartment. The only evidence of the existence of a high-capacity magazine came from the Government's solitary statement

---

[17] "(a) Base Offense Level (Apply the Greatest):" "(4) 20, if— … (B) the (i) offense involved a (I) semiautomatic firearm that is capable of accepting a large capacity magazine; or (II) firearm that is described in 26 U.S.C. § 5845(a); and (ii) defendant (I) was a prohibited person at the time the defendant committed the instant offense; … ." U.S.S.G. § 2K2.1(a)(4)(B).

[18] R.106.

[19] *Id.*

at the sentencing hearing that "the agent confirmed that that gun was sold with a 30-round magazine."[20]

In response, the Government asserts that "circumstantial evidence showed that [Mr.] Rogers had knowledge of a high-capacity magazine since he was with A.W. at the time the Sig Sauer 400 was purchased, and he both physically and jointly possessed the gun after the purchase."[21] Mr. Rogers now contends that "even if a large capacity magazine was present when [he] and A.W. left the Bloomington Rural King, strict liability should not apply to enhance [his] sentence where nothing in the record suggests he was aware that such a magazine was in or near the rifle, especially later at the apartment."[22]

But this argument was conceded in the sentencing hearing itself. At the sentencing hearing, Mr. Rogers only objected to the higher base offense level on the ground that the high-capacity magazine was not present when he physically possessed the firearm in the store. In fact, Mr. Rogers's attorney appeared to recognize that a high-capacity magazine *was* purchased with the rifle. He stated the following at the sentencing hearing:

> So if I understand Mr. Rogers correctly, he believes that the jury's verdict was based on what happened at the gun counter, which did not include any kind of a magazine whatsoever and that he should not be, have a base offense level

---

[20] R.125 at 8.

[21] Appellee's Br. 29.

[22] Appellant's Br. 25.

> that is jacked up by six points because someone else later came and purchased a gun that did have a magazine on it. I believe that, that is his argument, and I certainly agree with him.[23]

Notably, Mr. Rogers never disputed the magazine's presence when the firearm was later purchased by A.W. Instead, he only objected to its existence near the firearm while he was physically holding it. Since Mr. Rogers did not object at sentencing that no high-capacity magazine was purchased at all, but instead only objected that there was not one near the firearm when he physically handled it, he has waived this argument.

"Although we construe waiver principles liberally in favor of the defendant, we have time and again found waiver in just this circumstance—where a defendant or his counsel either concurs with the facts found in a pre-sentence report, or expressly declines to make an objection to those facts at sentencing, or both." *United States v. Robinson*, 964 F.3d 632, 642 (7th Cir. 2020) (citation omitted). "In making this determination, we consider express statements of waiver, as well as evidence of acquiescence." *United States v. Mansfield*, 21 F.4th 946, 954 (7th Cir. 2021). "We have found waiver where either a defendant or his attorney expressly declined to press a right or to make an objection." *United States v. Cooper*, 243 F.3d 411, 416 (7th Cir. 2001). Finally, we have previously held that "where a defendant has access to the PSR, and knows of his right to object to it, objects to certain parts of the PSR, and then states on the record that he does not have any others, '[t]his seems to us the paragon of intentional relinquishment' that

---

[23] R.125 at 7.

warrants a finding of waiver." *Robinson*, 964 F.3d at 641 (alteration in original) (quoting *United States v. Brodie*, 507 F.3d 527, 531 (7th Cir. 2007)).

Here, Mr. Rogers failed to object to the assertion that a high-capacity magazine was, in fact, purchased with the Sig Sauer rifle. Thus, he has effectively conceded that argument. By focusing on the lack of a high-capacity magazine being either in or near the firearm at the sales counter, he relinquished his right to argue that *any* high-capacity magazine was purchased at all. And the district court found there was sufficient evidence to support the government's theory of joint possession of the Sig Sauer with A.W., who purchased the rifle along with the high-capacity magazine.

But even if Mr. Rogers had not conceded this point, it would ultimately fail. Mr. Rogers presented no evidence at the sentencing hearing that contradicted the findings in the PSR. Mr. Rogers denied the existence of the high-capacity magazine when he handled the rifle at the sales counter, but did not deny that it was purchased with the rifle by A.W. Nor did he make an argument that the facts surrounding the purchase of the magazine along with the firearm were inaccurate. Thus, Mr. Rogers "failed to produce any evidence that would call into question the factual allegations contained in the PSR, which were based upon hearsay evidence that the court deemed more reliable than the defendant's bare denial." *United States v. Isirov*, 986 F.2d 183, 186 (7th Cir. 1993). "Generally, where a court relies on a PSR in sentencing, it is the defendant's task to show the trial judge that the facts contained in the PSR are inaccurate." *United States v. Mustread*, 42 F.3d 1097, 1101–02 (7th Cir. 1994). Here, Mr. Rogers failed to argue or demonstrate that the facts underlying the higher

base offense level applied in the PSR were inaccurate or incorrect.

While one might reasonably expect more evidence in the record of the purchase of the high-capacity magazine (a receipt of sale from Rural King or the recovered magazine from A.W.'s apartment), even without it, it was within the district court's discretion to find that it was more likely than not purchased along with the rifle.[24] "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574.

Mr. Rogers effectively waived this argument at the sentencing hearing. But even if he had not, after reviewing the evidence we are not left with a definite and firm conviction that a mistake was made on this issue. Thus, the district court did not err in applying the higher base offense level when calculating Mr. Rogers's Guidelines range.

---

[24] "In applying the sentencing guidelines, the court 'may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.'" *United States v. Grigsby*, 692 F.3d 778, 788 (7th Cir. 2012) (quoting U.S.S.G. § 6A1.3(a)).

## CONCLUSION

No constructive amendment of Mr. Rogers's indictment occurred. The district court properly identified the risk for duplicitous counts at trial but cured the problem with its final jury instructions. Additionally, the district court used the correct base offense level when calculating Mr. Rogers's Guidelines range. Therefore, the judgment of the district court is affirmed.

                                                      AFFIRMED