In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 22-2932

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ADRIAN L. JOHNSON,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:21-cr-00017 — **Holly A. Brady**, *Chief Judge.*

_____

ARGUED OCTOBER 24, 2023 — DECIDED FEBRUARY 15, 2024

_____

Before ROVNER, WOOD, and HAMILTON, *Circuit Judges.*

WOOD, *Circuit Judge.* After pulling over Adrian Johnson for driving with a suspended license, Sheriff's Deputy Matthew Haber had his trained dog sniff around Johnson's car. The dog alerted to the scent of a controlled substance, prompting Haber to search the car. The dog was right: Haber found drugs, drug paraphernalia, and two handguns. In time, Johnson faced federal charges for possession of drugs with intent to distribute in violation of 21 U.S.C. § 841(a), being a

felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

Johnson moved to suppress all evidence, contending that the search of his car violated his rights under the Fourth Amendment. The district court denied the motion. Johnson then pleaded guilty in exchange for the dismissal of the felon-in-possession charge, but he reserved his right to appeal the suppression ruling. The court sentenced Johnson to 180 months in prison, and he filed the anticipated appeal. We agree with the district court that Haber did not unconstitutionally prolong the stop to conduct the dog sniff, and we therefore affirm.

**I**

On January 26, 2021, Deputy Haber was driving a marked police vehicle on Interstate 69 in DeKalb County, Indiana, when he saw Johnson driving a white SUV in the opposite direction. Haber noticed that Johnson was looking beneath his arm—an odd move that he interpreted as a sign that Johnson might be trying to hide his face. Believing that this behavior might indicate criminal activity, Haber began to follow Johnson. As he drove, he ran Johnson's license plate through the squad car computer and learned that it was expired. Driving with an expired license plate is a traffic infraction in Indiana, and so Haber activated his lights to initiate a traffic stop. Johnson pulled over, but Haber thought he took an unusually long time to do so.

Upon request, Johnson produced paper identification and a bill of sale for the car, but he did not furnish its registration

or a driver's license. (Indiana law requires registration of a car within 45 days of purchase; those 45 days had expired months earlier.) Haber returned to his vehicle and ran Johnson's identification. The system informed him that Johnson had a suspended license and a prior conviction, which made it a misdemeanor for him to drive. Because Johnson had no license and the car was not registered to him, Haber decided to impound the car. He called for backup and began preparing two documents: an impound log and a warning for Johnson's expired plate. Deputy Carren Franke soon arrived as backup.

A DeKalb County policy requires officers to inventory vehicles before impounding them. Shortly after Franke's arrival, Haber instructed Johnson to get out of his car to allow the officers to conduct their inventory. Johnson refused to consent to a search of his car but allowed Haber to search his person for weapons. Haber frisked Johnson and found about $1,600 in cash. The officers decided that Franke would put him in the back seat of her police vehicle while they inventoried the car Johnson had been driving.

Franke walked Johnson to her squad car; as she did so, Haber brought his dog out to sniff Johnson's car. The dog sat twice on the passenger side of the car, alerting to the presence of a controlled substance. The dog sniff wrapped up about 85 seconds after Franke began escorting Johnson to her car.

Franke then handcuffed Johnson and informed him that they were detaining him because the dog had alerted near his vehicle. They told him that he was not yet under arrest, but that they were going to search his car. Haber began searching the car and quickly found a pipe used for smoking methamphetamine. He then placed Johnson under arrest and informed him of his *Miranda* rights. The officers continued

searching the car and found a box containing a handgun. Near where the dog had alerted, they also found a bag containing 44 grams of methamphetamine, a mixture containing fentanyl, a digital scale, and another handgun. Haber called for a tow truck and waited with the car while Franke took Johnson to jail.

As we noted earlier, the government brought drug and weapons charges against Johnson. Johnson moved to suppress all evidence found in the car as fruits of an unconstitutional search. The court denied his motion, finding that the dog sniff did not violate the Fourth Amendment, and that it provided the officers with probable cause to search the car. Johnson then entered a conditional guilty plea, and the court sentenced him to 15 years in prison.

## II

The Fourth Amendment protects against unreasonable searches and seizures. Johnson does not challenge the initial traffic stop, and rightly so. Haber was entitled to stop Johnson because he knew that Johnson was driving with an expired license plate in violation of state law. *Whren v. United States*, 517 U.S. 806, 810 (1996).

Johnson's primary argument is that the dog sniff violated his Fourth Amendment rights. He cannot mean the sniff by itself, however, because the Supreme Court has held that a dog sniff is not a search and so does not implicate the Fourth Amendment. *Illinois v. Caballes*, 543 U.S. 405, 409 (2005). The point is a more subtle one: an officer may not *prolong* an otherwise-lawful traffic stop in order to conduct a dog sniff. In *Rodriguez v. United States*, the Court clarified that the permissible duration of a traffic stop is determined by the "mission"

of the stop. 575 U.S. 348, 356 (2018). If an officer prolongs a
stop beyond its permissible length to conduct a dog sniff, even
for a short time, the stop becomes unlawful unless the officer
has reasonable suspicion of criminal activity. *Id.* at 356–57. In
the present case, the government argues that the dog sniff did
not prolong the stop, that it was independently supported by
reasonable suspicion even if it did prolong the stop, and that
the evidence would inevitably have been discovered during
the inventory search anyway.

## A

At the outset, we note that Johnson did not challenge the
length or validity of the dog sniff in the district court. The rec-
ord therefore does not contain information crucial to the *Ro-
driguez* inquiry, such as whether Deputy Haber acted dili-
gently in filling out the impound log while waiting for
backup. To the extent Johnson is now trying to rely on "pars-
ing the time line of the stop" to show that the officers failed
diligently to pursue their traffic mission, that argument is for-
feited. *United States v. Stewart*, 902 F.3d 664, 674–75 (7th Cir.
2018).

The district court found it unnecessary to address the
question whether the officers deviated from their traffic mis-
sion. It resolved the case instead by examining whether Ha-
ber's decision to conduct the dog sniff prolonged the traffic
stop. If it did not, then Johnson has nothing to complain
about. We may thus turn to that issue. Johnson's arguments
on this point are not forfeited, to the extent they are based on
facts available in the record. *United States v. Rogers*, 44 F.4th
728, 737 (7th Cir. 2022); see also *United States v. Hernandez-Ro-
driguez*, 352 F.3d 1325, 1328 (10th Cir. 2003) ("We conclude
that when the district court *sua sponte* raises and explicitly

resolves an issue of law on the merits, the appellant may challenge that ruling on appeal on the ground addressed by the district court even if he failed to raise the issue in district court.").

**B**

We review the district court's findings of fact for clear error and its legal conclusion *de novo. United States v. Gholston*, 1 F.4th 492, 496 (7th Cir. 2021). *Rodriguez* held that investigations into potential crimes during a traffic stop are detours from an officer's traffic mission, as are "safety precautions taken in order to facilitate such detours." 575 U.S. at 356. Johnson argues that when Haber stopped pursuing traffic-related tasks to conduct the dog sniff, he detoured from the mission of the traffic stop, violating *Rodriguez*.

But the "critical question" under *Rodriguez* is not whether the officer conducted any investigatory task during the stop. It is "whether conducting the sniff prolongs—*i.e.,* adds time to—the stop." 575 U.S. at 357 (internal quotation marks omitted). A case therefore becomes problematic under *Rodriguez* only when an officer, having no legal basis to keep a suspect in place, drags her feet during a traffic stop to give a trained dog time to arrive.

This is not that case. Haber did not have to wait for a colleague to show up with a dog, because he was himself a "K-9 Deputy" and already had a drug-sniffing dog with him. By the time Haber brought the dog to Johnson's car, Johnson was already in trouble. The officers knew that he was driving with a suspended license, and so they had probable cause to arrest him. Even if, as the record indicates, Haber did not plan to arrest Johnson for the misdemeanor, he would not have

allowed Johnson to drive away without a valid license. The district court therefore correctly found that by the time Haber brought the dog out of his vehicle, Johnson "was already in police custody and going nowhere." The stop was prolonged not by the dog sniff, but by Haber's discovery that he would have to impound Johnson's car and not allow him to drive away in it.

Perhaps Johnson is saying that the officers could have driven him home (or to the jail) faster had Haber not paused the impound process to conduct the dog sniff. But the dashcam footage from Haber's vehicle reveals that at the beginning of the dog sniff, Deputy Franke was walking Johnson to her vehicle. Securing a suspect in a police vehicle can be "reasonably incidental" to a traffic stop. *United States v. Lewis*, 920 F.3d 483, 492 (7th Cir. 2019). That is particularly so in this case; the officers were required to inventory and impound the car, and the alternative to placing Johnson in a police vehicle would have been to leave him standing on a highway on a cold January night. True, if Franke secured Johnson in her vehicle only to facilitate the dog sniff, *Rodriguez* might well be violated. But "to the extent that we simply do not know whether every moment was spent in traffic-related tasks, the fault for those omissions lies with" Johnson for failing to raise the issue at the trial level. *Stewart*, 902 F.3d at 676.

## III

Our conclusion that the dog sniff did not unreasonably prolong the stop makes the remainder of the Fourth Amendment analysis straightforward. To be reasonable, a search generally must be supported by probable cause and a warrant, but officers may dispense with the warrant requirement for vehicle searches under the so-called automobile exception.

*United States v. Ross*, 456 U.S. 798, 823 (1982). Thus, to search the car, Deputy Haber needed only probable cause to believe that it contained contraband. Because Johnson does not challenge the drug-sniffing dog's reliability, we can accept the district court's finding that the dog's alerts gave the officers probable cause to search the car. See *Florida v. Harris*, 568 U.S. 237, 246–47 (2013). The search of Johnson's car therefore did not violate the Fourth Amendment. In light of that fact, we have no need to reach the government's alternative arguments.

The judgment of the district court is AFFIRMED.